A04A1879. AT SYSTEMS SOUTHEAST, INC. et al. v. CARNES.
(613 SE2d 150)

Barnes, Judge.

The facts surrounding this case are undisputed. On July 30, 1999, an armored truck operated by an employee of AT Systems Southeast, Inc. (AT Systems) collided with a minivan in which Judy Carnes was a passenger. Carnes suffered serious injuries as a result of the collision. After a jury trial, Carnes received a verdict of $1,250,000.

1. In several enumerations of error, AT Systems asserts that the verdict was excessive, the evidence was insufficient to support the amount, and that the trial court erred in denying its motion for remittitur or, in the alternative, motion for new trial on the basis of an excessive verdict. We do not agree.

OCGA § 51-12-12 (a) provides: "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."

> The amount of damages returned by a jury in a verdict for pain and suffering due to alleged negligence is governed by no other standard than the enlightened conscience of impartial jurors. And the defendant has a heavy burden under OCGA § 51-12-12 (a) to establish that such a damage award is excessive[.] In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. . . . Therefore, for this Court to overturn the jury's verdict, it must be so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake by the jurors. Moreover, because the trial court approved the verdict in denying [AT Systems'] post-trial motion, a presumption of correctness arises that will not be disturbed absent compelling evidence.

(Citations and punctuation omitted.) *Beam v. Kingsley*, 255 Ga. App. 715, 716 (1) (566 SE2d 437) (2002).

In this case, the evidence shows that Carnes suffered a displaced posterior and anterior column fracture, commonly known as a type of hip fracture. Following her injury, she was immobile for approximately six months and required the daily assistance of two caretakers. During this time Carnes developed blood clots in her legs and a resulting pulmonary embolus which required additional hospitalization and the placement of a filter in the main vein coming from her leg and pelvic area to keep blood clots from going to her lungs. Carnes still walks with the assistance of a walker or she uses a wheelchair and testified that she cannot stand or walk without excruciating pain. She was initially deemed a poor surgical candidate because of her history of high blood pressure, obesity and poor circulation, and decided to take the conservative approach with her treatment and not undergo hip surgery because of her problems with blood clots. At the trial, she testified that she wants to have surgery to repair her hip. Carnes' medical costs were $30,791.16, and the hip replacement surgery is expected to cost $43,699.70. Evidence was also presented that Carnes' injury is permanent, and that she may require additional surgery related to the injury in the future, as well as follow-up care including physical therapy.

Carnes was 59 years old at the time of the accident and, as a homemaker, was quite active in her church and with her grandchildren. Since the accident she can no longer babysit her grandchildren, nor participate in her former church activities.

AT Systems argues that given the amount of special damages of only $74,791.16, and the evidence that surgery would substantially relieve Carnes' pain, the award of $1,250,000 is "flagrantly excessive."

> Under Georgia law, pain and suffering in the past, present, and future are measured by the enlightened conscience of a fair and impartial jury. There exists no rule or yardstick against which damages for pain and suffering are to be measured, as suggested by [AT Systems], who would have such damages as some multiple of special damages for medical expenses and lost wages. The reason is simple; if such an objective yardstick is applied, then the young, the old, the sick, the disabled, the rich, the poor, the unemployed, and the underemployed would be treated differently than the fully employed when having such special damage cap apply.

*Smith v. Crump*, 223 Ga. App. 52, 57 (2) (476 SE2d 817) (1996).

Based on the evidence presented and because the verdict was based in significant part on Carnes' pain and suffering, we cannot say that the jury's verdict is so flagrant as to shock the conscience. Moreover, AT Systems has pointed to no compelling evidence to warrant overturning the jury's verdict.

2. AT Systems also argues that the trial court erred in denying its motion for mistrial after Carnes introduced evidence of her lack of financial means.

This issue arose when Carnes was asked why she did not have hip replacement surgery immediately after the accident. She answered "well, first of all, Dr. Martino told me about the blood clots. I couldn't — and then, too, financial, you know, I couldn't." AT Systems objected on the grounds that evidence of Carnes' financial circumstances was not admissible at trial, and moved for a mistrial. During a brief recess, the trial court offered AT Systems the opportunity to rebut Carnes' statement with "evidence of financial resources." It waived that right, and excepted to any curative instruction. The trial court brought the jury in and instructed them that,

> the plaintiff inadvertently interjected information regarding financial status. The Court is instructing you that the financial status of the plaintiff should not be a factor in your deliberations. You are to disregard any testimony, whatsoever, regarding the financial status of the plaintiff.

A trial court's denial of

> a motion for mistrial will not be disturbed absent a manifest abuse of discretion. Where a motion for a mistrial is made on the ground of inadmissible evidence illegally placed before the jury, the corrective measure to be taken by the trial court is largely a matter of discretion, and where proper corrective measures are taken and there is no abuse of discretion, the refusal of the trial court to grant a mistrial is not error. [Cit.]

(Punctuation omitted.) *Voxcom, Inc. v. Boda*, 213 Ga. App. 257, 258 (444 SE2d 164) (1994).

We find that Carnes' remark, taking into consideration its character, in that it appeared to be an inadvertent slip, was subject to correction and that the corrective action taken by the trial court in this case was adequate to remove any harmful effects. Accordingly, we discern no abuse of discretion in its failure to grant a mistrial.

3. AT Systems also asserts that the trial court erred in charging the jury on presumption of evidence and "egg shell plaintiff."

(a) The trial court charged the jury that

where a party has evidence by which the party may repeal a claim or charge against him or her, and omits to produce it, or having more certain and satisfactory evidence, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well-founded, but this presumption may be rebutted. [See OCGA § 24-4-22.]

AT Systems excepted to the charge and maintains on appeal that there was no evidence that it "failed to produce any evidence which would have repealed any claim against it." It contends that Carnes' assertion that AT Systems' failure to produce the accident report and pictures of its armored truck supports the charge is erroneous because it admitted liability and, thus, the documents were not relevant.

In *Cotton States Fertilizer Co. v. Childs*, 179 Ga. 23, 31 (174 SE 708) (1934), the Supreme Court cautioned that the principle set forth in OCGA § 24-4-22 applies only in cases where it is shown that a party has withheld evidence within the party's power and control and held that an instruction on OCGA § 24-4-22 "can be given in charge only in exceptional cases, and the greatest caution must be exercised in its application." Id. Pretermitting the appropriateness of the charge in these circumstances, as AT Systems pointed out, liability was admitted in this case, and as the evidence in question went to liability and not damages, any error was harmless.

(b) As to the charge on the "egg shell plaintiff," there was evidence that Carnes was obese and had circulatory problems and high blood pressure, which could complicate her recovery. "[I]t has long been the rule that a tortfeasor takes a plaintiff in whatever condition he finds him. A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act [is] negligent. [Cit.]" (Punctuation omitted.) *Coleman v. Atlanta Obstetrics & Gynecology Group*, 194 Ga. App. 508, 510 (1) (390 SE2d 856) (1990).

Since a charge may be given when there is slight evidence to sustain it, and here evidence was presented of Carnes' preexisting conditions, we find no error in the charge as given. *King v. Turner*, 255 Ga. App. 56, 57 (564 SE2d 463) (2002).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 22, 2005 —
RECONSIDERATION DENIED APRIL 7, 2005 — 

*Goldner, Sommers, Scrudder & Bass, Thomas E. McCarter*, for appellants.

*Broughton & Fernandez, Allen L. Broughton, Peter A. Law*, for appellee.