## A11A2332. McINTEE v. DERAMUS.
### (722 SE2d 377)

MIKELL, Presiding Judge.

Following a jury verdict in favor of appellee Eric Deramus, Lonnie McIntee appeals from the trial court's denial of his motion for a judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative, new trial.[1] Finding no error, we affirm.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the

---

[1] Appellant's motion for permission to file a reply brief is hereby denied.

denial of defendant's motion for new trial will not be disturbed.[2]

On appeal from a trial court's denial of a motion for j.n.o.v.,

we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; judgments notwithstanding the verdict are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[3]

McIntee's sole enumeration of error is that the trial court erred in "finding that there was a basis for discounting Defendant Myers' uncontroverted admissions."

Because the evidence was in conflict, we view it with every presumption and inference in favor of the jury's verdict.[4] Deramus's complaint alleged six causes of action[5] against McIntee, Joe Myers, and a third party not involved in the trial. The general verdict form and final judgment reflected a verdict against McIntee for $105,000 and against Myers for $95,000.[6]

According to Felicia and Eric Deramus, Myers was Eric's cousin and he introduced them to Lonnie McIntee while they were living in Birmingham. Because Mrs. Deramus's father had died in September 2003, and left her mother a small inheritance, she and Eric were trying to assist her mother in investing $150,000 for her retirement. In 2003, McIntee, who said he was a CPA and entrepreneur, drove to Birmingham to meet with them several times to discuss an investment in a line of credit for Gulf South Technologies, a company involved in L. E. D. production and development. The money was supposed to be placed in a secure account to support a line of credit for the business and to pay the Deramuses interest. On December 2, 2003, Eric Deramus gave McIntee a cashier's check for $150,000, payable to GSA Technologies, LLC. According to Eric Deramus, the money was to be placed in an account at Washington Mutual Bank

---

[2] (Punctuation and footnote omitted.) *McLeod v. Robbins Assn.*, 260 Ga. App. 347 (579 SE2d 748) (2003).

[3] (Punctuation and footnote omitted.) *Johnson v. Leibel*, 307 Ga. App. 32, 40 (3) (a) (703 SE2d 702) (2010), cert. granted on other grounds, *Leibel v. Johnson*, 291 Ga. 180 (728 SE2d 554) (2012).

[4] *McLeod*, supra.

[5] Count 1, conversion; Count 2, fraud; Count 3, fraudulent inducement to contract; Count 4, breach of contract; Count 5, unjust enrichment; Count 6, unfair trade practices. Claims were also made for costs, attorney fees, and punitive damages.

[6] Myers did not file an appeal.

(WAMU) which required both his and McIntee's signatures to remove any money. Deramus signed the account signature cards, and they were taken by McIntee, along with the check. Deramus also signed a Shareholders Agreement for GSA Technologies, LLC, reflecting him as a shareholder along with McIntee. McIntee also took that document and told Deramus he would send him a copy. When Deramus eventually looked at the copy provided, documents had been swapped and Myers and others had been added to the documentation.

Instead of depositing the money into an account accessible only by Deramus and himself, however, McIntee deposited it into another account he set up at WAMU on which he and Myers were the only signatories. Although there was a November 25, 2003, Partnership Statement of Authority for GSA Technologies, LLC at WAMU, which appeared to contain his signature, Deramus denied that he signed the document.

Once the money had been deposited, Mr. and Mrs. Deramus began having difficulty contacting McIntee. They understood that they were to receive monthly interest payments, but received only $500 to $700. When Mrs. Deramus finally contacted McIntee in mid-March 2004, he first told her that her mother's funds had been "put into production" and other explanations of its use. Eventually, Mr. and Mrs. Deramus asked for the return of the $150,000, at which point McIntee told them the money was gone. McIntee then told them that Myers had taken the money.

McIntee acknowledged that he received the $150,000 from Eric Deramus and that he deposited it into an account to which Myers had access. On March 9, 2004, Myers directed WAMU to close the line of credit account, the money market account, and the business checking account for GSA Technologies, LLC and to wire over $150,000 from these accounts to an account at Bank of America in the name of Myers Enterprises, LLC. On March 9, 2004, a wire transfer in the amount of over $158,000 was made on behalf of GSA Technologies, LLC to Myers Enterprises, LLC from the WAMU account into which the Deramuses' check had been deposited. Eric Deramus denied any knowledge that Myers was to be involved in the investment in any way.

According to Myers, he spent the money for "general business expenditures." Also, Myers issued checks to McIntee for over $10,000 from the corporate accounts, which McIntee cashed. Myers testified that he was authorized to make business expenditures as he saw fit based on his agreement with McIntee. In his mind, GSA Technologies was McIntee. Myers acknowledged that he took and kept the over $150,000 through his agreement with McIntee, and McIntee stated that he allowed Myers to withdraw the money.

Although McIntee argues that there was no allegation that McIntee and Myers acted in concert, a reading of the complaint shows that it does allege concerted action.

To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined "either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. . . . [T]he conspiracy of itself furnishes no cause of action. The gist of the action . . . is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage."[7]

The essential element of the alleged conspiracy is proof of a common design establishing "that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design."[8] After the conspiracy is formed, members of the conspiracy are jointly and severally liable for acts of co-conspirators done in furtherance of the conspiracy.[9] Whether or not inferences should have been drawn that McIntee and Myers acted in concert in converting the $150,000 was a jury issue, and we will not disturb the trial court's judgment where, as here, there is evidence to support the jury's verdict.[10]

McIntee's argument that the verdict against him is precluded by judicial admissions by Myers that he alone took the money is also unavailing. First, there are no admissions in pleadings or in response to requests for admissions from Myers,[11] only his testimony at trial. Obviously, any witness's testimony is subject to a determination of credibility by the jury.[12]

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED JANUARY 24, 2012.

*Theodore H. Lackland*, for appellant.
*Clarence R. Johnson, Jr.*, for appellee.

---

[7] (Citation omitted.) *Savannah College of Art & Design v. School of Visual Arts of Savannah*, 219 Ga. App. 296, 297 (464 SE2d 895) (1995).

[8] (Citation omitted.) *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 649 (3) (629 SE2d 468) (2006).

[9] *Cook v. Robinson*, 216 Ga. 328, 329 (2) (116 SE2d 742) (1960).

[10] *Outside Carpets v. Indus. Rug Co.*, 228 Ga. 263, 269 (185 SE2d 65) (1971); *John D. Stephens, Inc. v. Gwinnett County*, 175 Ga. App. 379, 386 (6) (333 SE2d 396) (1985).

[11] *Ferguson v. Duron, Inc.*, 244 Ga. App. 19, 20 (534 SE2d 142) (2000) (requests for admission); *Wahnschaff v. Erdman*, 232 Ga. App. 77, 78 (1) (502 SE2d 246) (1998) (admissions in pleadings).

[12] "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80.