**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A1290. VINEYARD INDUSTRIES, INC. d/b/a McDONALD'S
    RESTAURANTS v. DESTA BAILEY et al.

MCMILLIAN, Judge.

Vineyard Industries, Inc., d/b/a McDonald's Restaurants ("Vineyard") appeals the judgment entered against it in a negligence action brought by Desta Bailey, as parent and guardian for Antonia Bailey, a minor (collectively the "Baileys"). Vineyard argues on appeal that the trial court erred in (1) allowing the Baileys' counsel to use story boards with pictures of testifying witnesses and quotations from their deposition testimony in opening statement that were inconsistent with their trial testimony; (2) excluding certain testimony by Vineyard's expert witness; and (3) entering judgment on the pain and suffering damages awarded by the jury, which Vineyard asserts was inconsistent with the evidence at trial. For the following reasons, we affirm.

On appeal, the presumption as to the validity of a jury verdict requires that all the evidence and every presumption and inference drawn from the evidence be construed most favorably to the jury verdict. *McIntee v. Deramus*, 313 Ga. App. 653, 653 (722 SE2d 377) (2012). So construed, the evidence shows that on the morning of April 18, 2013, before heading to school, Antonia Bailey ("Antonia") stopped for breakfast at a McDonald's restaurant owned by Vineyard. After ordering, Antonia went to the restroom, which was in the opposite direction from both the door she had entered and the restaurant's drink machine. After exiting the restroom, Antonia walked toward the drink machine. She was watching where she was walking and looking at the drink machine. She was not on her cell phone or otherwise distracted. Nevertheless, she slipped in front of the drink machine and fell.

Antonia remembers that after she fell she noticed that the floor around the drink machine was wet, and a number of witnesses testified that it appeared that the area had just been mopped. In fact, when Antonia landed, she was facing a McDonalds' worker who was mopping another area of the restaurant. However, Antonia did not see a wet floor sign in the vicinity of the drink machine or in the direction from which she had walked, and one of the cashiers, who came to help her after she fell, told her that the employee was mopping and should have put out a wet

2

floor sign. The only wet floor sign anyone remembered seeing was in the vicinity where the employee was then mopping, which was by the drive-through entrance that Antonia had used to enter the restaurant, although neither the employee nor the sign were there when she entered the building.

On February 14, 2014, Desta Bailey filed suit on behalf of her then-minor daughter, Antonia, against Vineyard for damages under a negligence theory. A jury trial commenced on January 19, 2016 and was completed two days later with the jury's return of a verdict in favor of the Baileys. The trial court entered judgment in accordance with the verdict, awarding $16,206.51 to Desta for past medical expenses incurred on behalf of Antonia and $28,224.82 for past medical expenses, $29,999 for future medical expenses, and $600,000 for pain and suffering to Antonia. It also entered judgment for Desta Bailey in the amount of $10,928.94 as interest under Georgia's Unliquidated Damages Act. Following the denial of its motion for a new trial, Vineyard filed this appeal.

1. In Vineyard's first enumeration of error, it contends that the Baileys' use of demonstrative exhibits during opening statement with quotations from witnesses' depositions was improper and the quotations prejudiced the jury because they were inconsistent with the evidence presented at trial.

3

In a civil trial, "counsel for either party shall be permitted to use a blackboard and models or similar devices in connection with his argument for the purpose of illustrating his contentions with respect to the issues which are to be decided by the jury, provided that counsel shall not in writing present any argument that could not properly be made orally." OCGA § 9-10-183. Counsel are given wide latitude in the use of demonstratives to assist in the jury's understanding of the issues to be decided at trial. *Tench v. Galaxy Appliance & Furniture Sales, Inc.*, 255 Ga. App. 829, 830-31 (1) (a) (567 SE2d 53) (2002) (physical precedent only); *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 303 (6) (436 SE2d 14) (1993). See also *Lewyn v. Morris*, 135 Ga. App. 289, 290 (1) (217 SE2d 642) (1975) ("Counsel for both parties in either a civil or a criminal case, preliminary to the introduction of evidence, may state to the jury what each expects to prove on the trial.") (citation and punctuation omitted). Upon objection to such evidence, the trial court has discretion in determining whether such demonstrative exhibits will be allowed, which we will uphold absent an abuse of that discretion. *Sheriff*, 210 Ga. App. at 303 (6) (trial court did not abuse its discretion in allowing counsel to read law in a civil case during opening argument and to present "such law by means of excerpts on charts").

4

It is evident from the record that Baileys' counsel used trial boards in opening statement with quotations from witness depositions and that Vineyard's counsel objected to their use. Counsel's stated use for these trial boards was to assist in clarifying to the jury what he intended the evidence to show by allowing the jury "to read along so that it doesn't all stream together and get lost." However, the trial boards were not included in the record on appeal nor does it appear that Vineyard requested that they be preserved for appeal. As the appealing party, Vineyard "bore the burden of ensuring an accurate and complete record on appeal and of taking steps to have the record supplemented with any necessary materials." (Citation and punctuation omitted.) *Central Ga. Women's Health Center, LLC v. Dean*, 342 Ga. App. 127, 133 (1) (a) (800 SE2d 594) (2017). See also *Griffin Builders v. Synovus Bank*, 320 Ga. App. 307, 309 (739 SE2d 760) (2013) ("[I]t is the appellant's duty to include in the record on appeal the items necessary for the appellate court to objectively review the evidence and proceedings giving rise to [the trial court's ruling.]") (citation and punctuation omitted); Ga. Ct. App. R. 18 (b) ("[I]t is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal[.]") Accordingly, we must presume that the evidence supported the trial court's ruling, and thus we find no abuse of discretion in permitting the trial

5

boards to be used during opening statement.[1] See *Crawford v. State*, 288 Ga. 425, 427 (2) (a) (704 SE2d 772) (2011).

2. Vineyard next argues that the trial court erred in allowing the Baileys to make a purportedly untimely objection to a portion of Vineyard's expert's testimony and in excluding that testimony after a hearing. The trial court's determination of whether a witness is qualified as an expert and whether to exclude a portion or the entirety of an expert's testimony shall not be disturbed absent manifest abuse of discretion. *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010); *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 279 (5) (658 SE2d 603) (2008).

On the morning of trial, the Baileys made a verbal motion in limine seeking to preclude Vineyard's expert, Dr. Eric Boulhouwer, Ph.D., from testifying regarding one of his four proposed opinions, arguing that it was not based upon any reliable

---

[1] To the extent that Vineyard also asserts error based on the Baileys' counsel's reading deposition testimony during his opening statement, we find that it has waived any such argument on appeal. Vineyard has not pointed us to any objection it raised to this portion of opening statement or any ruling by the trial court on this ground. It is well settled that "[w]hen a party fails to assert a contemporaneous objection to allegedly improper remarks of counsel, the party waives his right to complain about the remarks on appeal." (Citation and punctuation omitted.) *Womack v. Johnson*, 328 Ga. App. 543, 545 (1) (762 SE2d 428) (2014).

6

methodology and that it would not be helpful to the jury. The trial court reserved ruling on this motion until Vineyard called Dr. Boulhouswer to testify. The trial court held a hearing shortly before Dr. Boulhouwer was called to testify, and based upon the voir dire testimony the trial court determined that although Vineyard could argue the substance of Dr. Boulhouwer's opinion, he could not testify to that opinion as an expert.[2]

(a) Vineyard first argues that the Baileys' objection to Dr. Boulhouwer's testimony was untimely because it was made after the pretrial order was entered, and the trial court committed reversible error in allowing such an untimely objection.

Under OCGA § 24-7-702 (d), the trial court may, upon motion by one of the parties, hold a pretrial hearing to determine whether a proposed expert witness qualifies as an expert under the statute and if his testimony meets the requirements of OCGA § 24-7-702 (a) and (b) to testify as an expert. The statute provides that such a hearing and the trial court's ruling "shall be completed no later than the final pretrial conference." OCGA § 24-7-702.

In this case, however, Vineyard did not identify Dr. Boelhouwer as an expert witness until one business day before the consolidated pretrial order was filed. The

---

[2] The substance of this opinion will be addressed in Division 2 (b) below.

7

pretrial order reserved the Baileys' right to file motions to challenge any late-disclosed experts, and the Baileys, on the morning of trial, brought their motion to the trial court's attention several days after Dr. Boelhouwer was presented for deposition. See OCGA § 9-11-16 (b) ("The order, when entered, controls the subsequent course of the action unless modified at the trial to prevent manifest injustice."). Moreover, the record contains no indication that the trial court held a final pretrial conference at which the motion in limine could have been heard. Accordingly, we find no abuse of the trial court's discretion to entertain the Baileys' motion. *Giannotti v. Beleza Hair Salon, Inc.*, 296 Ga. App. 636, 640-41 (1) (675 SE2d 544) (2009) (no abuse of discretion for trial court to consider motion in limine to exclude expert testimony when expert was identified two years after interrogatories requesting names and opinions of experts were served and deposition was not scheduled until one week before trial); *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 818 n.3 (665 SE2d 898) (2008) (acknowledging trial court's discretion to entertain objection to expert testimony even where motion in limine is untimely). Cf. *Ford Motor Co. v. Gibson*,

283 Ga. 398, 403 (5) (659 SE2d 346) (2008) (motion to exclude expert testimony filed several months after final pretrial conference was untimely).[3]

(b) Vineyard also argues that the trial court erred in granting the motion in limine because Dr. Boulhouwer met all the criteria for testifying under OCGA § 24-7-702 (b) and his opinion would have been both helpful to the jury and relevant.

Dr. Boulhouwer's disputed opinion was that "one cannot conclude to a reasonable degree of scientific certainty that had a different or additional warning been presented to an individual [in Antonia's position] that would necessar[ily] change their behavior in such a manner as to avoid this accident." Dr. Boulhouwer later explained that "to a reasonable degree of scientific certainty" meant that "there was no evidence in the scientific literature to support that an additional warning sign would change someone's behavior," noting that the scientific literature suggests that although some people may change their behavior in response to a warning sign, not all people will. Dr. Boulhouwer based his opinion on his understanding of the scientific literature , and he brought several articles to court of which he was aware,

_____

[3] Because OCGA § 24-7-702 carries forward the language from former OCGA § 24-9-67.1 (d) requiring that motions to determine the qualifications of experts be heard and ruled upon no later than the final pretrial conference, prior cases construing that language under the earlier statute remain good law.

9

but upon which he did not specifically rely, in forming his opinion. In explaining his opinion, Dr. Boelhouwer cited one study that demonstrated that not all people chose to avoid an area containing a wet floor sign, but he conceded that this research made no attempt to study whether those individuals who chose to proceed despite the warning altered the manner in which they traversed the affected area.

OCGA § 24-7-702 (b) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

The party seeking to rely on the expert bears the burden of establishing not only that an expert is qualified and that the expert's testimony is reliable within the meaning of the statute, but also that the testimony will be helpful to the jury. *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 293 (788 SE2d 421) (2016).

Although the trial court made no specific findings in its determination that Dr. Boulhouwer could not testify about the opinion at issue, we find that Vineyard has failed to carry its burden to show that the testimony was admissible. Vineyard argued below that Boulhouwer's testimony met the statutory criteria because the Baileys did not dispute his competency to testify as a human factors expert, "there is literature to support his opinion," and the opinion is based on this literature and not just his personal opinion. However, pretermitting whether Vineyard has shown that Dr. Boelhouwer based his opinion on sufficient facts or data or whether the opinion is the product of reliable principles and methods, Vineyard has failed to show how Dr. Boelhouwer applied those principles and methods reliably to the facts of this case. Specifically, even assuming the literature shows that some people respond to warnings, while others do not, Dr. Boelhouwer failed to explain how someone in Antonia's position would have responded to a warning sign in the area of the drink machine. To the contrary, the gist of his testimony was that no one could say to a reasonable degree of scientific certainty how anyone would react had a sign been in place. Moreover, the fact that some people do not heed warning signs and other people respond to them is within the common knowledge of jurors, without the need

11

for expert opinion, and the trial court permitted Vineyard to raise that point in its argument to the jury.

Accordingly, we find that Vineyard has failed to establish that the trial court abused its discretion in excluding the expert's testimony on this issue. See *Winters v. Fru-Con, Inc.*, 498 F3d 734, 741, 743 (II) (C) (7th Cir. 2007) (lower court properly excluded human factors expert's testimony where it failed to meet requisite standards of intellectual rigor); *Calhoun v. Yamaha Motor Corp.*, 350 F3d 316, 322 (II) (A) (3d Cir. 2003) (trial court did not abuse its discretion in excluding expert opinion that lacked adequate foundation in literature or testing); *Previto v. Ryobi North America, Inc.*, 766 FSupp2d 759, 766 (II) (B) (S.D. Miss. 2010) (excluding human factor's expert's testimony based upon insufficient facts and data); *Calvitt v. Procter & Gamble Mfg. Co.*, 207 FSupp2d 527 (I) (M.D. La. 2002) (excluding testimony of human factors' expert where adequacy of warning was factual issue that jury could handle without expert help).

3. Vineyard further argues that the trial court erred in entering judgment because the jury award of damages was contrary to the preponderance of the evidence. We find no error.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence." (Citation omitted.) *McIntee*, 313 Ga. App. at 653. See also *Beam v. Kingsley*, 255 Ga. App. 715, 716 (1) (566 SE2d 437) (2002).

(a) Vineyard complains that the jury's apportionment of no fault to Antonia was error because it went against the weight of the evidence and that Antonia's "admissions" mean that no reasonable jury could determine that Vineyard had superior knowledge of the wet floor. Vineyard cites as admissions Antonia's answers on cross-examination that, based on her past experiences in restaurants such as McDonald's, she knew that the floor in front of a drink station could become wet from excess ice and drinks and that she did not need a sign to tell her that. However, even though Antonia admitted that she knew that such areas *could* become wet, there was no evidence to show that she saw that the floor at McDonald's was wet that morning, that she knew it had recently been mopped, or that the wet area extended from the drive-through door to the wall, not just in the immediate area of the drink machine. In fact, the evidence is to the contrary. Antonia testified that she was always careful around drink machines, was not distracted, was not in a hurry, was watching

13

where she was going, was wearing sneakers, and did not see any water on the floor when she entered the drink machine area. Moreover, the evidence supported a finding that the floor was wet, not from spilled drinks or ice, but because a Vineyard employee had mopped the floor around the drink machine without posting a sign to warn of the wet surface. Based on this evidence, the jury was authorized to find that Antonia bore no fault for her fall.

(b) Vineyard also argues that the trial court should have granted a new trial on the issue of damages because the award of $600,000 for pain and suffering, which was 13 times the award for special damages, was so clearly excessive that it is inconsistent with the preponderance of the evidence.

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). It is well established that the amount of an award for pain and suffering damages

> is governed by no other standard than the enlightened conscience of impartial jurors. And the defendant has a heavy burden under OCGA § 51-12-12 (a) to establish that such a damage award is excessive. In particular, appellate courts should be hesitant to second-guess verdicts

14

where the damage award is based on any significant part on pain and suffering. . . . Therefore, for this Court to overturn the jury's verdict, it must be so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake by the jurors.

*AT Systems Southeast, Inc. v. Carnes*, 272 Ga. App. 671, 671 (1) (613 SE2d 150) (2005).

Here, the evidence showed that after her fall, Antonia felt pain along her left side from her bottom to her thigh and down her leg. The store manager offered to fill out an incident report, but Antonia wanted to get to school so as to not be late. During school, Antonia began to experience pain in her left knee severe enough that her father had to pick her up early from school. The next day, Antonia went to work at her internship with a pediatrician's office but realized that the pain was worsening the more she walked around. At that point, the doctor took a look at Antonia's knee and recommended Antonia see an orthopedist.

On April 22, 2013, Antonia consulted an orthopedist, and a diagnostic MRI revealed that she had a torn meniscus. She underwent surgery on May 30 and spent the rest of the school year on crutches or in a wheelchair. Prior to the fall, Antonia was energetic and an athlete with no history of knee issues, playing multiple sports

15

in high school. After surgery, she was in severe pain, but after physical therapy, she was able to put some weight on her knee with the assistance of crutches, eventually increasing her activity level in an attempt to return to competitive sports. However, the more active Antonia was, the more pain she had in her knee, so she went to a second orthopedist in February 2014. The orthopedist recommended further physical therapy, which Antonia undertook, and an MRI when the pain still did not recede. Based on the MRI results during the summer of 2014, the orthopedist recommended a second knee surgery to fix a cartilage tear, which was performed on December 23, 2014.

After the second surgery, Antonia experienced severe pain, she had trouble walking to class and around her dorm, and she was unable to participate in many activities with friends. Eventually she returned to her orthopedist and had a third MRI. That MRI showed that the cartilage tear was not healing, and the orthopedist recommended an osteochondral allograft transfer system ("OATS") procedure. Antonia went to a third orthopedist for a second opinion after receiving the MRI results, and the third orthopedist concurred that Antonio would either need the OATS procedure or an osteotomy, but preferably both at the same time. Antonia plans to have further surgery when she graduates from college in the spring of 2018 so she can

take time to recover before starting post-graduate schooling. Antonia testified at trial that she was not in as much pain as before the visit to her third orthopedist, due in part to a specific knee brace he recommended Antonia use until the surgery, although she is still experiencing pain three to four times a week and is limited in her activities.

Despite this evidence, Vineyard contends that in making its award, the jury ignored undisputed testimony at trial, including the Baileys' experts' testimony that additional surgery would likely take care of the pain Antonia is currently suffering. However, damages for pain and suffering are not awarded merely for the pain the plaintiff experiences at the time of trial or the pain the plaintiff is expected to suffer following all possible corrective surgeries. Rather, such damages are awarded for past, present, and future pain and suffering beginning at the time of the injury for which the lawsuit was filed. *Carnes*, 272 Ga. App. at 672.

There is ample evidence in the record that Antonia suffered severe pain for at least two years after her fall, still experiences pain, and will likely experience some pain after her third knee surgery. Vineyard points to no evidence let alone compelling evidence, nor have we found any upon review of the record, that shows that the verdict was so excessive as to shock the conscience and require reversal. *Carnes*, 272 Ga. App. at 671-72 (1) ($1,250,000 verdict was not excessive although special

17

damages were only $74,791.16 and future surgery would "substantially relieve" plaintiff's pain); *Beam v. Kingsley*, 255 Ga. App. at 716 (1) (affirming $2.5 million award for funeral expenses and pain and suffering where decedent survived for two minutes, drowning in his own blood, after the fatal crash where record supported award and appellant could point to no compelling evidence to the contrary).

Therefore, the trial court did not abuse its discretion in denying Vineyard's motion for a new trial on the issue of damages.

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur.*