**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 23, 2025**

# In the Court of Appeals of Georgia

A25A0073. THOMAS v. ACCURATE STEEL RULE CUTTING DIE, INC. et al.

HODGES, Judge.

Plaintiff Jason Thomas appeals from the trial court's denial of his motion for new trial following a judgment entered on the jury's verdict in this action involving a vehicle collision. Thomas asserts that the trial court erred by: (1) allowing the jury to consider documents not admitted into evidence; (2) denying his motion for a new trial or additur under OCGA § 51-12-12 based on a grossly inadequate verdict; (3) failing to give the "eggshell plaintiff" instruction to the jury; and (4) failing to exercise its role as the "thirteenth juror." While we affirm the portion of the trial court's order denying Thomas' motion for new trial based on his first three assertions, we agree with Thomas that the trial court failed to apply the proper standard of review in acting

as the thirteenth juror and considering Thomas' motion for new trial under the general grounds. We therefore vacate the portion of the trial court's order denying Thomas' motion for new trial on the general grounds and remand the case for the trial court's proper consideration of those grounds.

The evidence showed that in October 2018, Thomas owned and operated a transportation company and was driving a delivery van on Interstate 20 to pick up a load for his business. He was in heavy stop-and-go traffic and was at a complete stop with no one behind him when a vehicle crashed into the back of his van. Thomas testified that the impact pushed his van into the vehicle in front of him, causing his glasses to fly off his face, his knee to hit the gear box, his shoulder to hit the door, and a large cloud of smoke to come from the rear of his van; however, the air bag did not deploy. Pictures depicting the damage to Thomas' van were introduced into evidence.

The vehicle that crashed into Thomas was owned by Accurate Steel Rule Cutting Die, Incorporated ("Accurate Steel"), and driven by its employee, Jeffrey Harrelson (collectively, the "defendants"). Harrelson admitted at trial that he caused the collision and that he received a citation for the accident.

Thomas testified at trial that he did not need assistance getting out of his van, declined an ambulance, and drove himself away from the scene. A few hours later, however, Thomas began experiencing headaches and pain in his lower back, knee, and shoulder and went to the emergency room. The doctor who evaluated Thomas did not believe x-rays were warranted and discharged him without any additional testing, telling Thomas to follow up with his primary care doctor and to come back if his symptoms worsened. A week later, Thomas went to a chiropractor and, throughout his treatment, he reported that his pain was improving. In fact, by December 5, 2018, Thomas indicated that his percentage of improvement was 70 percent, and on January 14, 2019, he indicated his percentage of improvement was 80 percent.

According to Thomas, his shoulder and knee pain resolved within a few months, but his back pain continued to worsen, and he testified that he has undergone treatment for the past five years as a result of the collision. Thomas admitted at trial, however, that he did not schedule any medical treatment or Telehealth visits from July 2, 2019 through August 2021. Thomas claimed he was weighing whether to have a procedure done, but could not point to any records noting a potential procedure; according to Thomas, it might have been "a verbal conversation" with the doctor.

On June 30, 2020, Thomas sued Accurate Steel, Harrelson, and both their insurance companies for his injuries and damages, and his deposition was taken in January of 2021. In September 2021, over two years since his last treatment and eight months after his deposition was taken, Thomas visited Dr. Shevin Pollydore at Peachtree Orthopedics. Pollydore testified by videotaped deposition that Thomas gave him a medical history that included treatment in June 2021 for kidney stones and procedures with a neurologist and treatment in 2015 for a prior motor vehicle collision where he injured his lower back and visited a chiropractor six times. At trial, Thomas denied any prior lower back injury and intimated that Pollydore "made that up[.]"

Upon examination, Pollydore noted that Thomas had some restrictions in his lower back range of motion and tenderness over some discs in his lower back. Pollydore reviewed an MRI taken on February 19, 2019, three months after the motor vehicle collision at issue in this case, and noted that it showed herniated discs at L5-S1[1] and L3-4, disc degeneration (arthritis) at L2-3, L3-4, and L4-5, and degenerative bone spurs. According to the doctor, Thomas' degeneration or arthritis was not caused by trauma and would continue to worsen and be painful without any trauma, and the

---

[1] "L" means "lumbar" or "low back" and S means "sacrum" or "tailbone."

bone spurs in Thomas' back had begun to develop well before the motor vehicle collision. Pollydore opined, however, that the October 30, 2018 motor vehicle collision caused Thomas' disc herniations. He recommended epidural injections or spinal fusion surgery.

On the other hand, a defense expert who also testified by videotaped deposition, Dr. Barry Jeffries, testified that the bulging discs depicted on Thomas' February 2019 MRI were caused by degenerative disc disease and not trauma, especially not a trauma that occurred only 3 ½ months before the MRI was taken. Specifically, he stated that the MRI showed that Thomas suffered from a chronic herniated disc at L5-S1 that had been there for years, and there was no evidence of any acute injury as a result of the motor vehicle collision at issue in this case.

Medical records of Thomas' treatment were admitted into evidence. According to Thomas, the cost of his treatments exceeded $100,000. Of that amount, $73,000 was incurred three years after the collision when Thomas was treated at Peachtree Orthopedics.

Thomas further testified at trial that he was 45 years old and did not have any physical problems prior to the collision. He was very active, exercised, and went

bowling, to batting cages, and to amusement parks. According to Thomas, he was unable to do those things without pain after the collision. He claimed that bending, sitting, standing for long periods, kneeling, and driving hurt his back. Though Thomas admitted that he returned to his normal routine and work duties following the accident, he testified that his job ultimately suffered because he could no longer lift much weight or drive for long periods, limiting his ability to grow his business and take on new clients.

A jury returned a verdict for Thomas in the amount of $50,000, and the trial court entered a final order and judgment based on the jury's verdict. Thomas filed a motion for additur or new trial, asserting: (i) the verdict was contrary to the evidence and the principles of justice and equity under OCGA § 5-5-20; (ii) the verdict was strongly against the weight of the evidence under OCGA § 5-5-21; (iii) the verdict was contrary to law under OCGA § 5-5-25; (iv) the court erred in its instruction to the jury under OCGA § 5-5-24; and (v) other grounds that may appear from the transcript or record. Following a hearing, the trial court denied Thomas' motion, incorporating "by reference as though fully set forth" in its order "the reasons the [c]ourt articulated on the record at the conclusion of the hearing[.]" This appeal followed.

1. Considering Thomas' third enumeration first,[2] Thomas contends that the trial court erred by allowing the jury to consider documents and facts not admitted into evidence. Specifically, he argues, without citing any applicable legal authority, that neither Jeffries' videotaped deposition nor deposition transcript was admitted into evidence, and therefore the trial court should have prohibited defense counsel from utilizing a PowerPoint during his closing argument showing slides with excerpts from Jeffries' video deposition played during the trial. The trial court considered this issue during the motion for new trial hearing and found no error. We likewise find no error.

OCGA § 9-10-183 permits parties to use blackboards, charts, or models for demonstrative purposes in opening statement, presentation of evidence, and argument for purposes of illustrating the contentions in the case. *Vineyard Indus. v. Bailey*, 343 Ga. App. 517, 519 (1) (806 SE2d 898) (2017); accord *Tench v. Galaxy Appliance and Furniture Sales*, 255 Ga. App. 829, 830 (1) (a) (567 SE2d 53) (2002) (physical precedent only). In fact, the Supreme Court of Georgia has approved the use of props,

---

[2] See, e.g., *Evans v. Jackson*, 368 Ga. App. 170, 172 (1), n. 2 (889 SE2d 343) (2023) ("For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them.") (citation and punctuation omitted).

maps, charts, and other analogous models and illustrative material in closing argument when based on evidence admitted at trial. See, e.g., *Laney v. State*, 271 Ga. 194, 198 (9) (515 SE2d 610) (1999), overruled on other grounds, *State v. Lane*, 308 Ga. 10, 24 (838 SE2d 808) (2020). "Counsel are given wide latitude in the use of demonstratives to assist in the jury's understanding of the issues to be decided at trial." *Bailey*, 343 Ga. App. at 519 (1); see also *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 303 (6) (436 SE2d 14) (1993) (finding no abuse of discretion in a party's use of charts during closing argument). That said, "[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same." OCGA § 9-10-185. "Upon objection to such evidence, the trial court has discretion in determining whether such demonstrative exhibits will be allowed, which we will uphold absent an abuse of that discretion." *Bailey*, 343 Ga. App. at 519 (1).

We first point out that although Jeffries' videotaped deposition was played for the jury during trial, neither his deposition nor his deposition transcript was actually admitted into evidence. As will be discussed, this is immaterial. The parties do not dispute that during closing argument, defendants' counsel used PowerPoint slides of

Jeffries' videotaped deposition.[3] However, neither the slides nor the PowerPoint are included in the record on appeal, nor does it appear that Thomas requested that they be preserved for appeal. "As the appealing party, [Thomas] bore the burden of ensuring an accurate and complete record on appeal and of taking steps to have the record supplemented with any necessary materials." (Citation and punctuation omitted.) *Bailey*, 343 Ga. App. at 519 (1). Without the slides or PowerPoint, "we must presume that the evidence supported the trial court's ruling, and thus we find no abuse of discretion in permitting the [slides] to be used during [closing argument]." (Footnote admitted.) Id. at 519-520 (1).

> Furthermore, as the trial court noted during the motion for new trial hearing,
>
>> the issue with the transcript really is not an issue. Plaintiff's counsel just, in essence, acknowledged or conceded that the transcript matched the video deposition that was shown. So basically, what defense counsel did was, in a Power Point presentation, use an excerpt of their expert witness' trial testimony and show it on a screen. Just to be clear, it is an excerpt of their witness' trial testimony, and they showed it on screen; the plaintiff could have done the same thing[.]

---

[3] At some point Thomas' counsel objected, stating, "[t]here were a few slides, and I was trying to be flexible, but . . . [y]ou can't argue anything that's not in evidence." The trial court overruled the objection after ascertaining that the slides were taken from Jeffries' videotaped deposition.

Indeed, it appears from the appellate record that the excerpts at issue were taken from Jeffries' videotaped deposition, which indicated it was "being taken for use at trial and for evidence" and which was, in fact, properly played for the jury without any objection during the trial.[4]

Thomas does not argue that the PowerPoint slides were based on incorrect testimony or a misstatement of the testimony. In fact, he conceded at trial and at the hearing on his motion for new trial that the slides contained what Jeffries said in his videotaped deposition. He further concedes in his appellate brief that "[h]ad the excerpts shown to the jury merely mimicked a video of the expert deposition properly placed into evidence, there would not be reversible error." What Thomas fails to realize is that the PowerPoint slides were not "unadmitted deposition excerpts" containing facts not in evidence, but were excerpts from a videotaped deposition that had properly been played for the jury during the trial. In fact, defense counsel stated at trial, "Your Honor, at this time, we would like to call Dr. Barry Jeffries via video

_____

[4] "The use [at trial] of a deposition of a witness taken after notice to the opposite party and with counsel for both parties present lies within the sound discretion of the court." *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 676 (2) (278 SE2d 100) (1981). Thomas makes no argument that the videotaped deposition was not properly played for the jury during the trial in this case.

deposition[,]" and the trial court granted the request and instructed defense counsel to play the videotaped deposition.

Contrary to Thomas' assertion, the fact that neither Jeffries' videotaped nor transcribed deposition was officially admitted into evidence is irrelevant because, like any other witness who testifies, the testimony given by Jeffries in his videotaped deposition and presented to the jury was trial testimony. And Thomas does not argue that the excerpts used in defense counsel's closing PowerPoint slides were not an accurate depiction of Jeffries' trial testimony. "Since counsel in argument clearly have the right to comment on the evidence, it is not improper for them to repeat what testimony was, to read from documents which have been admitted in evidence, or to read from admitted transcripts of recordings played for the jury." (Citation and punctuation omitted.) *Hodges v. State*, 194 Ga. App. 837, 838 (3) (392 SE2d 262) (1990). The trial court did not abuse its discretion in allowing the defendants to use the PowerPoint slides as demonstrative evidence in their closing argument.

2. Thomas argues that the trial court abused its discretion in denying his motion for new trial or additur under OCGA § 51-12-12.[5] Specifically, Thomas asserts that the

[5] "OCGA § 51-12-12, enacted as part of the Tort Reform Act of 1987, codifies into state law the concept of additur in connection with jury verdicts. Under the

11

$50,000 jury award was "grossly inadequate" and "inconsistent with the preponderance of the evidence in this case" such that it must have been the result of bias, prejudice, or corruption. This claim lacks merit.

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). However,

> [i]f the jury's award of damages is clearly so inadequate or so excessive as to any party as to be inconsistent with the preponderance of the evidence, the trial court may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court.

OCGA § 51-12-12 (b). "[A]n . . . inadequate verdict is a mistake of fact . . . and addresses itself to the discretion of the trial judge, who, like the jury, saw the witnesses and heard the testimony." (Citation omitted.) *Rockdale Hosp. v. Evans*, 306 Ga. 847,

concept of additur, if a trial court determines that an award of damages for the plaintiffs is insufficient, it would conditionally grant a new trial unless the defendant consents to an increased damages award for the plaintiff." (Citations and punctuation omitted.) *Columbus Regional Healthcare System v. Henderson*, 282 Ga. 598, 599 (652 SE2d 522) (2007).

851 (2) (a) (834 SE2d 77) (2019). The trial court determines whether the damages awarded were "within the range authorized by a preponderance of the evidence[,]" and the court's "approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence." (Citation omitted.) Id.

This Court's review "is confined to the question of whether the trial court abused its discretion in deciding the motion for new trial on this ground." *Evans*, 306 Ga. at 851 (2) (b); accord *Brown v. Service Coach Lines*, 71 Ga. App. 437, 446 (31 SE2d 236) (1944) ("The determination of the question, as to whether a verdict for damages is inadequate in the legal sense, lies within the sound discretion of the trial court, which will be interfered with by the appellate court only in case of a manifest abuse of discretion."). "[T]he threshold for an appellate court to set aside a jury verdict approved by the trial court under OCGA § 51-12-12 (a) is extremely high." (Citation and punctuation omitted.) *Evans*, 306 Ga. at 852 (2) (b). We may not

> substitute [our] judgment for that of the trial court on the fact-based question of whether the damages awarded were within the range authorized by a preponderance of the evidence; [we] instead [must] limit[ our] review to whether the trial court, who saw the witnesses and heard the testimony, abused its discretion in denying the motion for a new trial.

(Citation and punctuation omitted.) Id.

An abuse of discretion occurs:

(1) where the trial court failed to exercise its discretion in reviewing the award; (2) where the trial court's exercise of its discretion was infected by a significant legal error or a clear error as to a material factual finding; or (3) where the verdict was so excessive or inadequate as to be irrational and thus the apparent result of jury bias, prejudice, or corruption.

(Citation and punctuation omitted.) *Evans v. Rockdale Hosp.*, 355 Ga. App. 33, 36 (1) (841 SE2d 449) (2020); see also *Evans*, 306 Ga. at 851-852 (2) (b). Applying these standards to the present case, we conclude that the trial court did not abuse its discretion in denying Thomas' motion for new trial or additur under OCGA § 51-12-12.

First, it is clear from the trial court's order [and its incorporated reasons articulated on the record at the conclusion of the motion for new trial hearing] that the court exercised its discretion in reviewing the verdict. Second, the trial court's exercise of its discretion was not infected by a clear error as to a material factual finding, or a significant legal error, because the order [and incorporated statements at the hearing] demonstrate[] that the court applied the correct legal principles.

14

(Citation and punctuation omitted.) *Geary v. Estate of Tapley*, 373 Ga. App. 561, 567 (3) (908 SE2d 324) (2024); see also *Evans*, 355 Ga. App. at 37 (1). Thomas does not raise any issue with regard to these first two factors. Rather, he argues that the trial court "abused its discretion in not providing any relief under OCGA § 51-12-12 because the irrational jury verdict in the face of the . . . evidence was apparently the result of 'jury bias, prejudice, or corruption.'" (Citation and punctuation omitted.) According to Thomas, an award of less than half his past medical expenses, let alone future damages, "strains rationality" and "indicates that factors outside the evidence influenced the jury's decision-making process, such as defense counsel's inappropriate closing argument[.]"

In light of the evidence summarized above, however, we do not find that the verdict was so inadequate as to be irrational or "as to shock the conscience." (Citation and punctuation omitted.) *Evans*, 306 Ga. at 852 (2) (b). And Thomas "points to no evidence let alone compelling evidence, nor have we found any upon review of the record," that challenges this conclusion and requires reversal. *Bailey*, 343 Ga. App. at 525 (3) (b). As the trial court indicated at the conclusion of the motion for new trial hearing, both Thomas' and the defendants' positions were plausible, and the jury was

authorized to weigh the evidence, assess the credibility of the witnesses, and believe the defense's theory over Thomas' theory.

As for Thomas' argument regarding defense counsel's use of PowerPoint slides during closing argument, as we found in Division 1, the defendants' closing argument was not inappropriate. Moreover, we conclude that the use of any PowerPoint slides based on Jeffries' videotaped testimony "does not rise to the level of showing that the jury's verdict, in light of the totality of the evidence presented at trial, was the product of bias, prejudice, or mistake." *Wal-mart Stores East v. Leverette*, 371 Ga. App. 543, 557 (2) (901 SE2d 607) (2024). Accordingly, the trial court did not abuse its discretion in denying Thomas' motion for new trial or additur on this ground.

3. Thomas challenges the trial court's charge to the jury, arguing that the trial court erred by failing to give his requested instruction on the eggshell plaintiff rule, which states that tortfeasors must take their victims as they find them. See *Cordero v. State*, 296 Ga. 703, 712 (3) (770 SE2d 577) (2015). This argument fails for a number of reasons.

First, Thomas fails to include any citations to the record regarding this argument in his original appellate brief as required by our Court rules. See Court of

16

Appeals Rules 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript."); 25 (d) (2) (providing manner of citation to the record). "In the absence of a specific reference, the Court will not search for and may not consider that enumeration." Court of Appeals Rule 25 (d) (1) (i).

Second, and more importantly, OCGA § 5-5-24 (a) provides, in pertinent part, that "no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The defendants point out that following the jury charge conference, Thomas stated that he had no objections to the jury instructions the court planned to read to the jury. And, he never took exception to the charges after they were read to the jury. Though Thomas' counsel voiced some objection during the charge conference,[6] "objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the charge is given do not preserve charging issues for appellate

---

[6] Thomas' requested instruction was discussed, but the trial court noted that Thomas had given no legal citation for the charge. Nevertheless, the trial court agreed to modify its charge on the aggravation of a preexisting injury instruction so that it covered the principle requested by Thomas.

review." (Citation and punctuation omitted.) *Tucker Nursing Center v. Mosby*, 303 Ga. App. 80, 87 (5) (692 SE2d 727) (2010) (finding no error in trial court's instruction regarding an eggshell plaintiff).

Because Thomas failed to object to the court's charge as given, we need only review the court's instructions to determine whether the court made "a substantial error in the charge which was harmful as a matter of law[.]" OCGA § 5-5-24 (c). We find that it did not. Without citing any legal authority, Thomas requested the following charge:

> I charge you members of the jury that the defendants in this case took plaintiff as they found him. That is, the fact that the plaintiff may have had certain preexisting conditions or disabilities, which combined with the negligent acts, if any, of the defendants caused the plaintiff's injury would not absolve the defendant(s) of liability if you should find that defendant(s) was negligent and that such negligence was a contributing cause of the plaintiff's injury.

The trial court instructed the jury on proximate cause and, after hearing Thomas' argument regarding his proposed instruction during the charge conference, gave a modified jury instruction on the aggravation of a preexisting condition as follows:

If you should [find] that, at the time of the incident, the plaintiff has any physical condition, ailment, or disease that was becoming apparent, was apparent or dormant, or was dormant, and if you should find that the plaintiff received an injury as a result of the negligence of the defendant, and that the injury resulted in any aggravation of a preexisting physical condition, then the plaintiff could recover damages for the aggravation of the preexisting physical condition.

Based on the court's instructions to the jury, we conclude that the trial court's failure to charge Thomas' requested instruction was not so "substantially or necessarily harmful as to warrant review when no exception was taken." (Citation and punctuation omitted.) *Geary*, 373 Ga. App. at 565 (2) (a) (ii).

4. Thomas asserts that the trial court failed to exercise its discretion as the "thirteenth juror" when considering his motion for new trial. We are constrained to agree.

In his motion for new trial, Thomas argued that "[t]he verdict is contrary to the evidence and the principles of justice and equity" under OCGA § 5-5-20 and "strongly against the weight of the evidence" under OCGA § 5-5-21. OCGA § 5-5-20 authorizes the trial court to grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity," and OCGA §

5-5-21 empowers the trial court to grant a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." These statutes, also known as the "general grounds" for a new trial, afford a trial judge "broad discretion to sit as a 'thirteenth juror' and weigh the evidence on a motion for new trial alleging these general grounds." (Citations and punctuation omitted.) *Moore v. Stewart*, 315 Ga. App. 388, 390 (3) (727 SE2d 159) (2012) (physical precedent only). When faced with a motion for new trial based on these general grounds, the trial judge "must consider some of the things that he cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." (Citation and punctuation omitted.) *Estate of Crook v. Foster*, 333 Ga App 36, 40 (2) (775 SE2d 286) (2015).

"This Court presumes, in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019); see also *Moore*, 315 Ga. App. at 391 (3). However, "[i]f the record reflects that the trial court failed to exercise its discretion and sit as the thirteenth juror . . . because he did not feel that he

20

had the duty or authority to override the findings of the jury upon disputed issues of fact[,]" we will vacate and remand the case for the trial court to fulfill its affirmative statutory duty. (Citations and punctuation omitted.) *Moore*, 315 Ga. App. at 390-391 (3); see also *Holmes*, 306 Ga. at 528 (2).

In this case, a review of the language used by the trial judge at the motion for new trial hearing, incorporated into the trial court's order denying the motion, shows that the judge never considered the general grounds or exercised his discretion as a "thirteenth juror." The trial court's order "made no reference to the general grounds, gave no indication that the trial court had considered or reweighed the evidence presented at trial, and did not suggest that the trial court had exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." *Holmes*, 306 Ga. at 528 (2). The order further "reveal[ed] no explicit reference to the standard it employed in denying [Thomas'] motion for new trial on the general grounds[,]" as set forth in OCGA §§ 5-5-20 and 5-5-21. *Moore*, 315 Ga. App. at 391 (3). While the order "incorporate[s] by reference as though fully set forth in this [o]rder" "the reasons the [c]ourt articulated on the record at the conclusion of the [motion for new trial] hearing," the judge never mentions the general grounds or its standard of review at the hearing, and the court's

stated reasons for denying the motion for new trial explicitly show that the trial judge denied the motion using an improper standard for the general grounds.

At the hearing, the trial judge noted that both parties presented plausible positions. The judge then stated that crediting one position over the other would put the court "in a position of second-guessing 12 DeKalb County residents who reached a unanimous verdict after they heard all the evidence in this case and applied a correct charge on the law." The judge continued: "That's, in essence, asking the court to reweigh the evidence and come out the other way; and that is something the court should not do." Later in rendering the court's decision, the trial judge noted that

> the jury . . . gets to determine the credibility of the witnesses; that's another area they have, as to each and every witness. And that's an area where it's particularly an issue for them to determine, and the court should not be second-guessing them on that or any of the other issues that are presented to them.

At the conclusion of the hearing, the court again noted that both sides had distinct positions, and a motion for new trial "should not be a vehicle . . . merely for overturning the unanimous decision of 12 DeKalb County residents as to what the

preponderance of the evidence in this case showed." The court declined to "supplant the jury's weighing of the evidence with one theory of the case rather than the other."

In short, the trial judge explicitly stated that he would not reweigh the testimony given or resolve any conflicts in the evidence, "denoting that the trial court failed to perform its duty to exercise discretion and weigh the evidence in its consideration of the general grounds[.]" *Brock v. State*, 373 Ga. App. 832, 837 (2) (910 SE2d 253) (2024). "It thus appears that the trial court failed to apply the proper standard in assessing whether the evidence was contrary to the jury's verdict as requested by [Thomas] in [his] motion for new trial." *Moore*, 315 Ga. App. at 391 (3); see *Alvelo v. State*, 288 Ga. 437, 438-439 (1) (704 SE2d 787) (2011) (concluding that trial court failed to apply proper standard in assessing the weight of the evidence as requested by defendant in his motion for new trial where trial court explicitly stated that it was solely within the purview of the jury to weigh conflicting evidence and judge credibility of witnesses and that the trial court would not usurp the jury's function); compare *Ridley v. State*, 315 Ga. 452, 456 (3) (883 SE2d 357) (2023) (holding that trial court performed its thirteenth-juror role where its order expressly stated that it had "re-examine[d] … the weight of the evidence and the credibility of

witnesses, as an independent fact-finder" and that, having done so, it "[declined] to grant a new trial on these general grounds"). "We therefore must vacate the portion of the trial court's order denying [Thomas'] motion for new trial under OCGA § 5-5-20 [and OCGA § 5-5-21] and remand this case to the trial court for consideration of [Thomas'] motion under the proper legal standard." *Moore*, 315 Ga. App. at 392 (3).

*Judgment affirmed in part and vacated in part, and case remanded with direction. McFadden, P. J., and Pipkin, J., concur.*