NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 29, 2024

S23G0701. SMITH et al. v. THE STATE.

COLVIN, Justice.

This is an appeal from an in rem civil-asset-forfeiture proceeding against over $1 million held in various bank accounts, real property, and other property that the State alleges was used, intended for use, or constituted the proceeds derived from the commission of numerous crimes related to the theft, purchase, and sale of catalytic converters and other regulated metal property. Appellants Garrett Smith, Stacey Smith, SmithCo Recycling, LLC ("SmithCo Recycling"), and SmithCo Transfer, LLC ("SmithCo Transfer") answered the State's forfeiture complaint, claiming to be the owners of the seized property, and moved to dismiss the complaint. In their motion to dismiss, Appellants argued that the trial court had failed to timely hold a bench trial or order a

continuance, in violation of OCGA § 9-16-12 (f), which provides that, "[i]f an answer is filed, a bench trial shall be held within 60 days after the last claimant was served with the complaint; provided, however, that such trial may be continued by the court for good cause shown." And Appellants also argued that the State had failed to allege the essential elements of a crime, in violation of OCGA § 9-16-12 (a), which provides that an in rem civil-asset-forfeiture "complaint shall . . . allege the essential elements of the criminal violation which is claimed to exist." The trial court denied the motion to dismiss, and the Court of Appeals affirmed. See *Smith v. State*, 366 Ga. App. 815 (884 SE2d 403) (2023).

We then granted certiorari to address three questions.[1] First, we asked whether the Court of Appeals erred in holding that OCGA § 9-16-12 (f)'s 60-day time period for holding a bench trial or continuing the trial for good cause in an in rem civil-asset-forfeiture case began to run when the last claimant, who was never served,

---

[1] We granted certiorari on September 19, 2023. The case was docketed to this Court's term beginning in December 2023 and was orally argued on January 9, 2024.

filed an answer without raising the defense of insufficient service. Second, we asked if the Court of Appeals erred in holding that the intent element of theft by taking could be inferred from the allegations of the second amended complaint, and thus that the second amended complaint satisfied OCGA § 9-16-12 (a)'s requirement that the complaint allege the essential elements of the offense. Finally, we asked if the second amended complaint alleged the essential elements of at least one criminal violation, assuming that it did not adequately allege the essential elements of theft by taking.

As explained below, we conclude that, based on statements Appellants made in the trial court, Appellants are estopped from arguing on appeal that the date SmithCo Transfer filed its answer was not equivalent to the date it was served with the complaint. On that basis, we affirm the trial court's denial of Appellants' motion to dismiss the complaint for failure to timely hold a bench trial or continue the trial under OCGA § 9-16-12 (f). And we vacate the portion of the Court of Appeals' opinion affirming the trial court's

3

timeliness ruling without expressing any opinion on the merits of the Court of Appeals' analysis or on the first certiorari question.

As further explained below, we hold that the trial court and the Court of Appeals erred in holding that the second amended complaint adequately alleged the essential elements of theft by taking, as required by OCGA § 9-16-12 (a). We therefore reverse the portion of the Court of Appeals' opinion holding otherwise. And because neither the trial court nor the Court of Appeals addressed in the first instance whether the second amended complaint adequately alleged the essential elements of any other offense that might support in rem civil forfeiture, we remand the case for further proceedings without answering the third certiorari question.[2]

1.     On December 3, 2021, the State filed an in rem civil-asset-forfeiture complaint against the property at issue in this case, which was seized from, among other locations, SmithCo Recycling's business address. The complaint named as potential claimants

---

[2] We thank the Institute for Justice and the Georgia Amusement & Music Operators Association for their amicus curiae briefs.

Garrett Smith, Stacey Smith, and SmithCo Recycling. And those potential claimants were served on December 6, 2021.

The Smiths and SmithCo Recycling answered the complaint on December 31, 2021, and their answer identified SmithCo Transfer as the owner of some of the property claimed to be subject to forfeiture. On January 13, 2022, the State filed a motion to join SmithCo Transfer as a necessary party. SmithCo Transfer then filed an answer to the complaint on January 21, 2022. And on January 24, 2022, the trial court signed an order granting the motion to join SmithCo Transfer, which was filed two days later.

On January 24 and 25, 2022, the parties and the assigned trial judge corresponded via email about possible trial dates in early February 2022. But it is unclear from the record whether the trial court set a date for a bench trial. And on January 31, 2022, the case was reassigned to another trial judge.

At a hearing before the new trial judge on February 10, 2022, the court stated that it was going to continue the trial for good cause until March 9 through 11, 2022. Appellants did not object to the

continuance.

On February 18, 2022, the State filed a second amended complaint. In the second amended complaint, the State alleged that SmithCo Recycling and SmithCo Transfer were companies conducting business in Georgia, and that Garrett Smith and Stacey Smith were involved in the day-to-day business and operations of both companies as co-owners, registered agents, or managing members. The State further alleged that, on various occasions, SmithCo Recycling, through its owners or agents, purchased catalytic converters or other regulated metals that they "knew or should have known were stolen"; that Garrett Smith enlisted third parties to purchase scrap vehicles or stolen catalytic converters for resale to SmithCo Recycling; that a SmithCo Recycling employee stole roll-off containers and sold them to SmithCo Recycling; that purchase transactions were completed "without the requisite documentation"; and that SmithCo Recycling failed to report certain purchase transactions to the Georgia Bureau of Investigation ("GBI"). Based on different combinations of these allegations, the

State alleged violations of numerous statutes, including OCGA § 10-1-351 (regulating the purchase of coils, copper wire, and catalytic converters), OCGA § 10-1-353 (requiring secondary metals recyclers to maintain records of purchase transactions), OCGA § 10-1-359.1 (requiring registration of secondary metals recyclers), OCGA § 10-1-359.5 (requiring secondary metals recyclers to provide purchase-transaction information to the GBI), OCGA § 40-3-36 (regulating the disposal of vehicles), OCGA § 16-4-8 (conspiracy to commit a crime), OCGA § 16-8-2 (theft by taking), OCGA § 16-8-4 (theft by conversion), OCGA § 16-8-7 (theft by receiving stolen property), OCGA § 16-8-83 (chop shop offenses), and OCGA § 16-14-4 (Racketeer Influenced and Corrupt Organizations Act offenses).

On February 28, 2022, Appellants filed a motion seeking dismissal of the second amended complaint or judgment on the pleadings. As relevant here, Appellants argued that the trial court had failed to timely hold a bench trial or order a continuance, as required by OCGA § 9-16-12 (f), and that the State had failed to allege the essential elements of a crime, as required by OCGA § 9-

7

16-12 (a).

Following a hearing, the trial court denied Appellant's motion on March 7, 2022. The trial court rejected Appellant's timeliness argument under OCGA § 9-16-12 (f) for two reasons. First, the trial court concluded that the 60-day period to hold a bench trial or continue the trial for good cause had not elapsed because, according to the trial court, the original trial judge had continued the bench trial for good cause during the email exchange on January 24 and 25, 2022, and the undersigned judge had further continued the trial for good cause during the February 10, 2022 hearing. Second, reasoning that waiver by appearance is a substitute for service, the trial court concluded that the 60-day period had not even begun to run until SmithCo Transfer filed its answer on January 21, 2022.

The trial court also rejected Appellants' argument that the second amended complaint failed to allege the essential elements of a criminal violation supporting civil forfeiture, as required by OCGA § 9-16-12 (a). The court concluded that the second amended complaint satisfied that pleading requirement because the State had

8

alleged that law enforcement officers "seized the properties and large quantities of regulated metal pursuant to the law enforcement investigation of theft by taking and theft by receiving stolen property."

On appeal, the Court of Appeals affirmed these rulings. See *Smith*, 366 Ga. App. at 817-820 (2)-(3). The Court of Appeals rejected Appellants' argument that the case should have been dismissed under OCGA § 9-16-12 (f), concluding that the 60-day time period did not run from the date that Garrett Smith, Stacey Smith, and SmithCo Recycling were served with the original complaint, as Appellants argued, but rather from the date that SmithCo Transfer filed an answer without having been served. See id. at 819 (3). The court reasoned that, "[b]ecause SmithCo Transfer filed an answer without raising the defense of insufficient service, the time SmithCo Transfer's answer was filed is the equivalent of the time the last claimant was served." Id.

The Court of Appeals also rejected Appellants' contention that the second amended complaint did not satisfy OCGA § 9-16-12 (a)'s

pleading requirement that an in rem civil-asset-forfeiture complaint allege the essential elements of a criminal violation. See *Smith*, 366 Ga. App. at 817 (2). The court stated that the complaint alleged numerous violations of theft by taking, charging that SmithCo Recycling and Garrett Smith enlisted an individual to steal catalytic converters, that a SmithCo Recycling employee stole roll-off containers, and that SmithCo Recycling purchased the stolen catalytic converters and roll-off containers, which it "knew or should have known . . . were stolen." Id. at 817-818 (2). The court further noted that the essential elements of theft by taking were "(1) an unlawful taking of the property of another (2) with the intent of depriving him of it." Id. at 817 (2) (citation and punctuation omitted). And although the Court of Appeals acknowledged that "the second amended complaint [did] not explicitly allege that the catalytic converters or the roll-off containers were taken with the intent to deprive the rightful owners of the property," the court nevertheless concluded that the second amended complaint adequately alleged the essential elements of theft by taking because "the requisite

10

intent can be inferred from the allegations of the complaint." Id. at 817-818 (2). We granted certiorari to address these rulings.

2.     The first certiorari question concerns the determinations of the trial court and Court of Appeals that OCGA § 9-16-12 (f) did not require dismissal of the second amended complaint. As noted above, OCGA § 9-16-12 (f) provides that "[i]f an answer is filed, a bench trial shall be held within 60 days after the last claimant was served with the complaint," unless the trial is "continued by the court for good cause shown." Here, the dispute turns on whether OCGA § 9-16-12 (f)'s 60-day period ran from December 6, 2021, the date that the Smiths and SmithCo Recycling were served, or January 21, 2022, the date that SmithCo Transfer filed an answer without being served and without raising insufficiency of service as a defense. Based on these dates, the deadline to hold a bench trial or order a continuance was either February 4, 2022, or March 22, 2022. And it is undisputed on appeal that the trial court granted a continuance for good cause on February 10, 2022. Thus, assuming without deciding that the trial court erred in concluding that the

11

formerly assigned trial-court judge had granted a continuance during the email exchange on January 24 and 25, 2022, OCGA § 9-16-12 (f) would mandate dismissal of the second amended complaint if the 60-day period ran from the date that the Smiths and SmithCo Recycling were served but not if the 60-day period ran from the date that SmithCo Transfer filed an answer.

Although our first certiorari question asked whether the Court of Appeals erred as a matter of law in equating the date that "the last claimant was served with the complaint" under OCGA § 9-16-12 (f) with the date that the last claimant filed an answer without raising a defense of insufficient service, we do not reach the merits of that determination. This is because, as explained below, we conclude that Appellants were estopped from arguing that the date SmithCo Transfer filed its answer should not be treated as the date SmithCo Transfer was served, after Appellants took the opposite position with respect to another issue in the trial court.

Judicial estoppel, which "is an equitable doctrine that can be invoked by a court at its discretion," *Fulton County. v. Ward-Poag*,

310 Ga. 289, 291 (2) (a) (849 SE2d 465) (2020), "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding," *IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766 (573 SE2d 58) (2002) (citation and punctuation omitted). See Black's Law Dictionary 668 (10th ed. 2014) (defining "judicial estoppel" as "[e]stoppel that prevents a party from contradicting previous declarations made during the same or an earlier proceeding if the change in position would adversely affect the proceeding or constitute a fraud on the court"). "The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Ward-Poag*, 310 Ga. at 292 (2) (b) (citation and punctuation omitted). See *Sherman v. City of Atlanta*, 293 Ga. 169, 175 (4) (744 SE2d 689) (2013) (noting that "judicial estoppel . . . is designed to protect the integrity of the judicial process by prohibiting parties from playing 'fast and loose' with the courts" (citation and punctuation omitted)).

"[T]hree factors generally inform a decision about whether to apply the doctrine [of judicial estoppel] in a particular case." *Ward-Poag*, 310 Ga. at 294 (2) (b) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (II) (121 SCt 1808, 149 LE2d 968) (2001)). Those factors are whether (1) "a party's later position [is] 'clearly inconsistent' with its earlier position," (2) "the party has succeeded in persuading a court to accept that party's earlier position," and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 293-294 (2) (b) (citation and punctuation omitted). But although these three factors are often instructive, they do not "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 294 (2) (b) (citation and punctuation omitted). This is because "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." Id. (citation and punctuation omitted).

Here, we conclude that Appellants are judicially estopped from

challenging the conclusion reached by the trial court and the Court of Appeals that SmithCo Transfer was effectively served on the date that it filed its answer because, during an e-mail exchange on January 24 and 25, 2022, Appellants strategically argued that the trial court and the State should reach just that conclusion in an effort to expedite the proceedings. The e-mail exchange shows that the trial court e-mailed counsel to inform them that the court had signed an order adding SmithCo Transfer as a party, that SmithCo Transfer had not yet been served, and that the court was required to hold a bench trial within 60 days after the last claimant was served absent a continuance for good cause. The court stated, "I am prepared to bench trial this case on February 1, 2022, and notice the attorneys, unless the attorneys advise me differently or show good cause." Appellants' counsel responded that Appellants were "ready to proceed on 2/1." But the State said that it "anticipate[d] filing a good cause motion for continuance to allow time for service on SmithCo Transfer[ ]." In response, Appellants' counsel wrote, "Judge: SmithCo Transfer, LLC filed a verified answer on Friday. It

15

was accepted yesterday. Effectively, SmithCo Transfer, LLC has acknowledged service and is ready to proceed also." In subsequent emails, the parties and the court discussed the possibility of alternative trial dates on February 9 or 10, 2022. And the State neither moved for a continuance nor served SmithCo Transfer.

From this email exchange, it is clear that the parties and the court understood OCGA § 9-16-12 (f) to require the court to hold a bench trial or grant a continuance for good cause by early February 2022 based on the service date of the Smiths and SmithCo Recycling, and that the State intended to move for a continuance in order to serve SmithCo Transfer. In this context, Appellants' response that SmithCo Transfer had "[e]ffectively . . . acknowledged service" by "fil[ing] a verified answer on Friday" evidences an intentional, strategic decision to persuade the trial court and the State that SmithCo Transfer did not need to be served, and that the court should therefore deny any forthcoming motion for a continuance, because SmithCo Transfer had functionally been served on January 21, 2022, the date that it filed its answer. In other words, Appellants

attempted to undermine the State's grounds for a continuance and therefore avoid delay by arguing that the court and the State should treat SmithCo Transfer's answer as a substitute for service.

Turning to the judicial-estoppel factors, Appellants' argument in the e-mail exchange is "clearly inconsistent" with the position they have taken on appeal. *Ward-Poag*, 310 Ga. at 293-294 (2) (b) (citation and punctuation omitted). As explained above, Appellants argued in the e-mail exchange that the court should treat SmithCo Transfer's answer as a substitute for service because the answer "[e]ffectively . . . acknowledged service." Cf. *Kennedy v. Porter*, 213 Ga. App. 398, 399 (444 SE2d 818) (1994) (holding that the defendant was timely served within the limitations period based on the date that the defendant's attorney acknowledged service). But Appellants then "deliberately chang[ed] [their] position[ ]," *Ward-Poag*, 310 Ga. at 292 (2) (b) (citation and punctuation omitted), when challenging the trial court's conclusion that, because SmithCo Transfer's answer was "in effect a substitute for service," OCGA § 9-16-12 (f)'s 60-day time period to hold a bench trial "began to run . . . at the time that

17

the last claimant, SmithCo Transfer, LLC, filed its answer on January 21, 2022." See *Reynaud v. Five Oaks Dev., Inc.*, 359 Ga. App. 606, 609 (1) (859 SE2d 570) (Ga. Ct. App. 2021) ("The essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." (citation and punctuation omitted)).

Whether Appellants "succeeded in persuading [the trial] court to accept [Appellants'] earlier position" that SmithCo Transfer's answer was a substitute for service is a closer call. *Ward-Poag*, 310 Ga. at 293-294 (2) (b) (citation and punctuation omitted). This is for two reasons. First, it appears from the record that Appellants' representation that SmithCo Transfer's answer was the functional equivalent of service persuaded the State to abandon its stated intention to move for a continuance to serve SmithCo Transfer, and thus, the trial court was never called upon to decide whether a continuance was necessary to effect actual service on SmithCo Transfer. Second, the trial court's OCGA § 9-16-12 (f) analysis did

not expressly rely on Appellants' representation that SmithCo Transfer's answer date was equivalent to its service date, although the trial court quoted the relevant language from the e-mail exchange in the section of its order addressing OCGA § 9-16-12 (f) and reached a conclusion consistent with that representation.

By contrast, the third factor — "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped," *Ward-Poag*, 310 Ga. at 293-294 (2) (b) (citation and punctuation omitted) — is clearly present here. Appellants argue on appeal that OCGA § 9-16-12 (f)'s 60-day time period to hold a bench trial or obtain a continuance must have run from the date that the Smiths and SmithCo Recycling were served because they were "the only parties served," and that the deadline expired on February 4, 2022, because "the State never filed a motion [for a continuance] asking that the . . . deadline be moved for 'good cause.'" But as noted above, the record indicates that the reason the Smiths and SmithCo Recycling were "the only parties served" and that the State did not

19

file a motion for a continuance was because, after the State said it intended to seek a continuance to serve SmithCo Recycling, Appellants represented to the court and to the State that SmithCo Recycling had been effectively served on the date it answered the complaint and therefore did not need to receive actual service.

In sum, the record shows that Appellants made a strategic decision to argue that SmithCo Transfer's answer was a substitute for service in order to forestall an anticipated motion for a continuance. But then Appellants opportunistically took the opposite position when challenging the trial court's denial of its motion to dismiss the case for failure to timely hold a bench trial or grant a continuance under OCGA § 9-16-12 (f). And because the facts and circumstances of this case make it apparent that Appellants' earlier position contributed to the State's decision not to seek a continuance or to serve SmithCo Transfer, allowing Appellants to maintain an inconsistent position on appeal would unfairly benefit Appellants to the State's detriment. Finally, while the court's acceptance of Appellants' earlier position is not clearly established,

that does not defeat application of the doctrine of judicial estoppel because no single factor is an "inflexible prerequisite[ ]" that must be satisfied before applying the doctrine. *Ward-Poag*, 310 Ga. at 294 (2) (b) (citation and punctuation omitted).

Considering all of the circumstances, we conclude that Appellants are estopped from arguing that the trial court or Court of Appeals erred in equating the date that SmithCo Transfer answered the complaint with the date that SmithCo Transfer was served. And as a result, Appellants cannot challenge the conclusion that OCGA § 9-16-12 (f)'s 60-day time period to hold a bench trial or obtain a continuance, which runs from the date of service on the last claimant, ran from the date that SmithCo Transfer answered the complaint. In light of our conclusion, we vacate Division 3 of the Court of Appeals' decision without expressing any opinion on whether the Court of Appeals correctly interpreted OCGA § 9-16-12 (f) in equating, as a matter of law, the date that "the last claimant was served" with the date that the last claimant filed an answer without raising a defense of insufficient service. See *Smith*, 366 Ga.

21

App. at 819-820 (3).

3.   In the second certiorari question, we asked if the Court of Appeals erred in holding that, because the intent element of theft by taking could be inferred from the allegations of the second amended complaint, the second amended complaint satisfied OCGA § 9-16-12 (a)'s requirement that the complaint allege the essential elements of the offense. As explained below, we conclude that the Court of Appeals erred in concluding that the State adequately alleged theft by taking because the standard for assessing whether an in rem civil forfeiture complaint adequately alleges the essential elements of a criminal violation under OCGA § 9-16-12 (a) is the same as the standard for assessing whether criminal charges in an indictment can survive a general demurrer, and the State's allegations regarding theft by taking fall short of that standard.

(a)   The Uniform Civil Forfeiture Procedure Act sets out the pleading requirements for an in rem civil-asset-forfeiture complaint in OCGA § 9-16-12 (a). As relevant here, that provision states that an in rem civil-asset-forfeiture "complaint shall . . . allege the

essential elements of the criminal violation which is claimed to exist." OCGA § 9-16-12 (a).

To determine whether the Court of Appeals correctly interpreted and applied this provision, we must "examine the statute's plain language" and read that text "in its most natural and reasonable way, as an ordinary speaker of the English language would." *Ford Motor Co. v. Cosper*, 317 Ga. 356, 359 (2) (893 SE2d 106) (2023) (citations and punctuation omitted). In doing so, we "presum[e] that the General Assembly meant what it said and said what it meant," and we "view[ ] the statutory text in the context in which it appears." Id. (citations and punctuation omitted). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." Id. (citation and punctuation omitted).

We begin our construction of OCGA § 9-16-12 (a) by noting that the provision, which was enacted in 2015, see Ga. L. 2015, pp. 693,

23

702, 753 §§ 1-1, 4-1 (effective July 1, 2015), was modeled on a statutory precursor in the Criminal Code. That statutory precursor provided that an in rem forfeiture complaint must "allege the essential elements of the violation which is claimed to exist." Former OCGA § 16-13-49 (o) (1) (effective through June 30, 2015). The only difference between this language and the language of OCGA § 9-16-12 (a) is that the latter provision specifies that it is the essential elements of a "criminal" violation that the State must allege. And the inclusion of the word "criminal" suggests that, while a forfeiture complaint under OCGA § 9-16-12 (a) is civil in nature, criminal law continues to provide relevant context for interpreting the meaning of the provision.

In the criminal context, alleging the essential elements of a criminal offense has long been understood as a requirement for creating a legally sufficient indictment that can survive a general demurrer or motion in arrest of judgment. See, e.g., *Stegar v. State*, 39 Ga. 583, 586 (1869) (holding that, because the indictment failed to allege robbery's "necessary" element "that the money or property

24

was taken *from the person* of another," the indictment was "fatally defective and the judgment must be arrested" (emphasis in original)); *Johnson v. State*, 203 Ga. 147, 148 (1) (45 SE2d 616) (1947) (holding that the trial court properly denied a general demurrer to an indictment because "[a]ll of the essential elements to constitute a violation of [the Criminal Code] section [were] alleged"); *State v. Eubanks*, 239 Ga. 483, 485-486 (238 SE2d 38) (1977) (noting that a general demurrer or motion in arrest of judgment "asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of the crime"), superseded by statute on other grounds as noted in *Palmer v. State*, 282 Ga. 466 (651 SE2d 86) (2007). This longstanding requirement derives from the constitutional right to due process. See *Eubanks v. State*, 317 Ga. 563, 582 (4) (894 SE2d 27) (2023) (noting that, "[t]o satisfy due process, an indictment must contain all the essential elements of the crime" (citation and punctuation omitted)); *Jackson v. State*, 301 Ga. 137, 139 (1) (800

SE2d 356) (2017) (noting that "the longstanding principle that an indictment is void to the extent that it fails to allege all the essential elements of the crime or crimes charged . . . is founded upon the constitutional guaranty of due process" (citations and punctuation omitted)); *Henderson v. Hames*, 287 Ga. 534, 538 (3) (697 SE2d 798) (2010) (noting that the "longstanding" principle that "[a]n indictment is void to the extent that it fails to allege all the essential elements of the crime or crimes charged . . . has a constitutional foundation" (citations and punctuation omitted)); *White v. State*, 270 Ga. 804, 806 (1) (514 SE2d 14) (1999) ("[D]ue process of law requires that the indictment on which a defendant is convicted contain all the essential elements of the crime.").

The standard for assessing whether the State has adequately alleged the essential elements of a criminal offense was well understood when the General Assembly enacted OCGA § 9-16-12 (a) in 2015, as it is today. Specifically, we have long held that

> [t]o assess the merits of a general demurrer, . . . a court asks whether the defendant can admit each and every fact alleged in the indictment and still be innocent of any

26

crime. If so, the general demurrer should be sustained. But if the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer.

*Powell v. State*, Case No. S24A0239, 2024 WL 1862075, at *4, __ Ga. __, __ (2) (__ SE2d __) (2024) (citation and punctuation omitted; citing case law tracing back to *Newman v. State*, 63 Ga. 533, 534 (1879)). See *Allen v. State*, 300 Ga. 500, 502 (2) (796 SE2d 708) (2017) ("The true test of the sufficiency of an indictment that will withstand a general demurrer is as follows: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good." (punctuation omitted) (quoting *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003)). Stated differently, "to withstand a general demurrer, an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish violation of a criminal statute" because, "[i]f either of these requisites is met, then

27

the accused cannot admit the allegations of the indictment and yet be not guilty of the crime charged." *Jackson*, 301 Ga. at 141 (1). See *Powell*, Case No. S24A0239, 2024 WL 1862075, at *4, __ Ga. at __ (2) (noting that we have framed the general-demurrer inquiry both ways). See also *Hames*, 287 Ga. at 538-539 (3) (holding that an indictment failed to charge the defendant with the full mens rea necessary to commit the charged crime because the indictment "omitted entirely any reference to [part of the] statutory [mens rea] requirement," and the facts alleged did not necessarily satisfy that mens rea requirement).

The legal and historical backdrop against which OCGA § 9-16-12 (a) was enacted therefore strongly suggests that the General Assembly adopted the standard for assessing the sufficiency of an indictment to withstand a general demurrer as the standard for assessing the sufficiency of an in rem civil-asset-forfeiture complaint. As explained above, OCGA § 9-16-12 (a)'s requirement that the State "allege the essential elements of the criminal violation which is claimed to exist" not only mirrored a provision formerly in

28

the Criminal Code but also invoked language that the law recognized as the standard for assessing the merits of a general demurrer challenging the legal sufficiency of a criminal indictment.

The State challenges this conclusion, arguing that in rem forfeiture proceedings are civil in nature, and that civil forfeiture pleadings are therefore governed by the Civil Practice Act's notice-pleading standard. See OCGA § 9-11-1 (providing that the Civil Practice Act "governs the procedure in all courts of record of this state in all actions of a civil nature"). See also OCGA § 9-11-8 (a) (2) (A), (f) (providing that a complaint must contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," and that "[a]ll pleadings shall be so construed as to do substantial justice"). But the primary provision of the Civil Practice Act on which the State relies shows why this argument is misguided. Specifically, OCGA § 9-11-81 provides that the Civil Practice Act "shall apply to all special statutory proceedings *except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law*." (Emphasis supplied.) "It is well

29

established that the legislature may impose pleading requirements in special statutory proceedings in addition to those found in the Civil Practice Act[,] and in such cases, the sufficiency of a pleading must be judged in light of the specific statutory requirements." *State v. Alford*, 264 Ga. 243, 245 (2) (a) (444 SE2d 76) (1994). Here, the legislature has provided special pleading standards for in rem civil-asset-forfeiture proceedings, requiring the State to "allege the essential elements of the criminal violation which is claimed to exist." OCGA § 9-16-12 (a). As a result, the State's argument that the Civil Practice Act's pleading standards for ordinary civil complaints govern the adequacy of in rem civil-asset-forfeiture complaints fails.

Accordingly, we hold that OCGA § 9-16-12 (a)'s requirement that an in rem civil-asset-forfeiture complaint "allege the essential elements of the criminal violation which is claimed to exist" requires the State to include allegations that could withstand a general demurrer challenging the sufficiency of an indictment. And as described above, that means the civil forfeiture complaint must, at

30

the very least, "recite the language of the statute that sets out all the elements of the offense charged or allege the facts necessary to establish [a] violation of a criminal statute," such that a person accused in the complaint of committing a criminal violation could not "admit the allegations of the [complaint] and yet be not guilty of the crime charged." *State v. Mondor*, 306 Ga. 338, 341 (1) (830 SE2d 206) (2019) (citation and punctuation omitted).

(b)   Having determined the appropriate standard for judging whether an in rem civil-asset-forfeiture complaint "allege[s] the essential elements of the criminal violation which is claimed to exist," OCGA § 9-16-12, we turn now to whether the Court of Appeals erred in holding that the second amended complaint satisfied that requirement.

As relevant here, the second amended complaint sought forfeiture of the seized property under OCGA § 10-1-359.3. That statute provides that "[a]ny property which is, directly or indirectly, used or intended for use in any manner to facilitate a crime and any proceeds derived or realized therefrom" are "contraband" and

31

"subject to forfeiture." OCGA § 10-1-359.3 (b), (c). The statute further provides that the word "[c]rime" includes "[t]heft by taking . . . , theft by conversion . . . , or theft by receiving stolen property . . . if the subject of the theft was regulated metal property." OCGA § 10-1-359.3 (a) (1) (A). "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2.

Here, the second amended complaint failed to allege the essential elements of theft by taking, as required by OCGA § 9-16-12 (a). The mens rea element of theft by taking — the intent to deprive the rightful owner of his property — is an essential element of the offense that must be alleged.[3] See *Mondor*, 306 Ga. at 341 (1) ("To the extent that an indictment fails to allege all the essential

---

[3] In its brief on appeal, the State concedes "that 'intent' is an essential element of any crime, and that the intent to deprive the original owner of the stolen property in question is an essential element of the offense of [t]heft by [t]aking."

32

elements of the crime or crimes charged, *including the required mens rea*, it violates due process, is void, and cannot withstand a general demurrer." (citation and punctuation omitted; emphasis supplied)). Accordingly, to satisfy OCGA § 9-16-12 (a)'s pleading standard, the State was required to either "recite the language of the statute that sets out" the intent-to-deprive element or "allege the facts necessary to establish" that element. Id. (citation and punctuation omitted).

The Court of Appeals correctly noted that the second amended complaint failed to recite theft by taking's statutory intent-to-deprive element. See *Smith*, 366 Ga. App. at 818 (2) (noting that "the second amended complaint [did] not explicitly allege that the catalytic converters or the roll-off containers were taken with the intent to deprive the rightful owners of the property"). But the Court of Appeals concluded that "the requisite intent c[ould] be inferred from the allegations of the complaint." Id. In reaching this conclusion, the court did not specify which allegations in the complaint supported such an inference. And as explained below, we

33

conclude that the court erred to the extent that it concluded that the second amended complaint alleged facts necessarily establishing theft by taking's intent-to-deprive element.

The second amended complaint did not include counts but was instead structured as a sequence of paragraphs, each of which included some allegations followed by citations to various statutes. It is difficult to discern which allegations in the complaint pertain specifically to theft by taking, as opposed to other alleged offenses. But the theft-by-taking allegations appear to fall into four partly overlapping categories. First, the State alleged that a third party sold stolen catalytic converters to SmithCo Recycling or Garrett Smith. Second, the State alleged that SmithCo Recycling or Garrett Smith purchased stolen catalytic converters or other regulated metals from third parties, including an employee of SmithCo Recycling, and that SmithCo Recycling or Garrett Smith knew or should have known that the catalytic converters or other regulated metals were stolen. Third, the State alleged that SmithCo Recycling or Garrett Smith enlisted third parties to purchase stolen catalytic

34

converters, which were then resold to SmithCo Recycling. Finally, the State alleged that SmithCo Recycling or Garrett Smith enlisted third parties to purchase stolen catalytic converters, which were then resold to SmithCo Recycling, and that SmithCo Recycling knew or should have known that the catalytic converters were stolen.

While these allegations about the purchase and sale of property known to be stolen may create an air of criminality, they fail to allege any facts showing that any person unlawfully took another's property "with the intention of depriving him of the property." OCGA § 16-8-2. The theft-by-taking allegations address only what happened to the property after it was allegedly "stolen."[4] But even if the complaint had alleged that a person "stole" property in violation of OCGA § 16-8-2, such an allegation would be insufficient to satisfy the pleading requirement, as it would

---

[4] The State contends that the second amended complaint alleged that third parties stole the regulated metals, not just that the property was stolen. However, a review of the second amended complaint reveals that the State did not rely on such allegations to charge that the third parties violated OCGA § 16-8-2, only that the purchasers of the regulated metals violated OCGA § 16-8-7 (a).

35

necessarily rely on factual assumptions not set out in the complaint to establish an "intention [to] depriv[e]" the rightful owner of the property. OCGA § 16-8-2. See *Jackson*, 301 Ga. at 140-141 (1)-(2) (holding that it "is not enough" to "alleg[e] that a statute has been violated," and that an indictment was legally insufficient where it was "based upon several assumptions of fact not set forth in the indictment"). And although the State argues that its allegations about third parties subsequently selling the stolen property shows an "intention [to] depriv[e]" the rightful owner of the property, those allegations fail to establish that the third parties took the property "with" such an intention. OCGA § 16-8-2. See *Brown v. State*, 302 Ga. App. 641, 643 (1) (692 SE2d 9) (2010) (noting that, to establish theft by taking, "[t]he evidence must show that the requisite intent to deprive the owner of the property was present *at the time of the taking*" (emphasis supplied) (quoting *Spray v. State*, 223 Ga. App. 154, 156 (1) (476 SE2d 878) (1996)).

To its credit, the State conceded at oral argument that, if the second amended complaint had instead been a criminal indictment,

its allegations could not have survived a general demurrer. And for the reasons set out above, we agree that the second amended complaint failed to adequately allege theft by taking. Accordingly, we reverse the Court of Appeals' conclusion to the contrary.[5]

4.  Our final certiorari question asked whether the second amended complaint adequately alleged the essential elements of any criminal offense other than theft by taking. However, neither the trial court nor the Court of Appeals addressed that issue, and we decline to make such a determination in the first instance. Accordingly, as explained above, we reverse in part and vacate in part the Court of Appeals' opinion. And we remand the case for further proceedings consistent with this opinion.

*Judgment reversed in part and vacated in part, and case remanded. All the Justices concur.*

---

[5] We note that the trial court's ruling fares no better. Rather than considering whether the second amended complaint recited the statutory elements of theft by taking or alleged facts establishing those elements, as it was required to do, the trial court simply concluded that the allegations of theft by taking were sufficient because the complaint alleged that the property at issue was seized "pursuant to [a] law enforcement *investigation* of theft by taking." (Emphasis supplied.) Alleging the existence of a criminal investigation is clearly insufficient to allege the essential elements of a criminal violation under the standard set out above.