**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 23, 2026**

# In the Court of Appeals of Georgia

A26A0087. QUIKTRIP CORPORATION v. ROBINSON.

RICKMAN, Presiding Judge.

In this personal injury action, the jury awarded plaintiff Patricia Robinson $1.8 million in damages against defendant QuikTrip Corporation. The trial court entered a judgment on the verdict and denied QuikTrip's motion for a new trial. QuikTrip appeals, contending that the trial court erred in denying its motion in limine to impose a $75,000 damages cap based upon the doctrine of judicial estoppel and in failing to set aside the verdict as excessive. We discern no error and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the trial evidence shows that on October 15, 2015 at approximately 3:45 a.m., Robinson visited the

---

[1] See *McIntee v. Deramus*, 313 Ga. App. 653, 653-54 (722 SE2d 377) (2012).

QuikTrip store located in Clayton County, Georgia. After she exited the store and was walking back to her car, she tripped and fell on an uneven portion of the concrete sidewalk at the premises. She fell forward onto her dominant right hand and hit her head. As a result of the fall, Robinson fractured the joint at her fifth metacarpal bone where the pinky finger meets the wrist on her hand. She had surgery, which included inserting temporary metal wires to repair the fracture. After the surgery, she engaged in physical therapy and performed exercises at home in efforts to strengthen and improve the flexibility in her hand and fingers.

Robinson filed a personal injury lawsuit against QuikTrip in the State Court of Clayton County ("trial court"), seeking to recover damages resulting from the fall incident. She sought to recover special and general damages, including those for "mental and physical pain and suffering and emotional distress in an amount to be determined by the enlightened conscience of the jury[.]"

Pursuant to 28 USC §1441(a),[2] QuikTrip filed a notice of removal of the case to the United States District Court for the Northern District of Georgia ("the federal

---

[2] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 USC § 1441(a).

court"), contending that jurisdiction was proper in the federal court based upon diversity of citizenship and the amount in controversy being in excess of $75,000.[3] Robinson filed a motion to remand the case to the trial court, alleging that removal was improper because QuikTrip "ha[d] not proven that the amount in controversy exceeds $75,000."[4]

The federal court entered an order remanding the case to the trial court. The remand order states:

Robinson asserts in her motion that the amount in controversy is only $7,165, an amount she describes as "special damages." These are

---

[3] "The [federal] district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... [c]itizens of different States[.]" 28 USC § 1332(a)(1). The removing party bears the burden of proving that federal jurisdiction exists. *Williams v. Best Buy Co.*, 269 F3d 1316, 1319(III) (11th Cir. 2001). "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Id. The burden is not met when the notice of removal merely makes a conclusory allegation that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such assertion. Id. at 1319-20(III).

[4] Robinson's brief in support of her motion to remand filed in the federal court has not been included in the appellate record before this Court. Consequently, Robinson's statements made to the federal court in that brief have not been established and presented for our review.

presumably medical expenses. The ad damnum clause, however, seeks an unspecified amount of damages related not only to medical expenses, but also emotional distress, pain and suffering, and other relief as the Court deems proper. Robinson's motion is silent regarding the potential value of these other damages.

The remand order further pointed out that Robinson's motion to remand was unopposed and "add[ed] nothing to the record for purposes of damages valuation or QuickTrip's averments regarding this case's removability." The federal court concluded that "the actual amount in controversy [was] unclear," and because QuickTrip failed to respond or proffer evidence regarding the alleged amount in controversy, QuikTrip had failed to carry its burden to prove that the amount in controversy was satisfied. Since "QuickTrip ha[d] not carried its burden to assuage the [federal court's] doubts regarding its jurisdiction," the case was remanded to the trial court.

On January 12, 2018, after the case was remanded, Robinson's doctor performed an examination and issued an impairment rating. At that time, the doctor concluded that Robinson had reached 75 degrees of flexibility in her finger,[5] she had

---

[5] Robinson's doctor explained that normal flexation is 90 degrees.

a 4 percent impairment of her upper extremity, and the decrease in motion will be permanent.

Prior to trial, QuikTrip filed a motion in limine to limit Robinson's recovery to $75,000, arguing that she was judicially estopped from claiming an additional amount based upon her assertions in the motion to remand before the federal court. The trial court denied QuikTrip's motion in limine. The case proceeded to a jury trial. At the conclusion of the trial, the jury entered a verdict awarding Robinson damages in the amount of $1.8 million.

QuikTrip filed a motion for reconsideration of the order denying its motion in limine concerning the $75,000 damages cap. QuikTrip also filed a motion for new trial, arguing that the jury's verdict was grossly excessive. The trial court denied both motions. This appeal followed.

1. QuikTrip contends that Robinson's damages should have been limited to $75,000 in accordance with the principles of judicial estoppel. In this regard, it argues that the trial court erred in allowing Robinson to seek damages exceeding $75,000 at trial after she represented to the federal court that the amount in controversy was less

than that amount in order to obtain a remand of the case to the trial court. No error has been shown.

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion. Its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Wal-Mart Stores E., LP v. Howell*, 371 Ga. App. 1, 2 (899 SE2d 524) (2024) (punctuation omitted). The doctrine "prevents a party from asserting a claim or position in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Gatto v. City of Statesboro*, 353 Ga. App. 178, 184(2) (834 SE2d 623) (2019). Three factors are generally considered in determining whether the doctrine of judicial estoppel should be applied:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

6

*Fulton County v. Ward-Poag*, 310 Ga. 289, 293-94(2)(b) (849 SE2d 465) (2020) (quoting *New Hampshire v. Maine*, 532 US 742, 750(II) (121 SCt 1808, 149 LE2d 968) (2001)). But these three factors are not intended to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 294(2)(b) (punctuation omitted). Instead, whether judicial estoppel applies depends upon the circumstances and specific factual context of the case. Id. We review a trial court's decision whether to apply judicial estoppel for an abuse of discretion. *Howell*, 371 Ga. App. at 2. The trial court did not abuse its discretion in declining to apply the doctrine in this case.

The relevant circumstances of this case are substantially similar to and controlled by this Court's decision in *Howell*. In that case, after the plaintiffs sued to recover unspecified damages related to a slip and fall incident, the defendant removed the case to federal court. *Howell*, 371 Ga App. at 1. The plaintiffs filed a motion to remand the case to state court based upon the defendant's failure to prove that the amount in controversy was sufficient to establish federal diversity jurisdiction. Id. The expenses that the plaintiffs had incurred were below the $75,000 threshold amount, but the plaintiffs also sought undetermined amounts for pain and suffering and

7

permanent disabilities, along with other damages. Id. The federal court found that federal jurisdiction was lacking and remanded the case to the state court. Id. After remand, the plaintiffs obtained a Functional Capability Evaluation ("FCE") concluding that the fall victim had lingering disorders and ongoing physical limitations. Id. at 3. Before trial, the defendant filed a motion to limit the plaintiffs' damages to $75,000 based on the federal remand order. Id. at 4. The trial court denied the defendant's motion. The jury awarded the plaintiffs damages exceeding $75,000. Id. We affirmed the trial court's denial of the motion to limit damages and concluded that judicial estoppel did not apply since the post-remand FCE documenting the plaintiff's lingering disorders constituted a change in circumstances that allowed the plaintiffs to pursue damages exceeding $75,000. Id. at 5(1).

Here, pretermitting whether Robinson can be deemed as having asserted an inconsistent position in the federal court,[6] as in *Howell*, the evidence establishes that

---

[6] The record does not conclusively establish that Robinson took a "clearly inconsistent" position or misled the federal court regarding the amount of damages being sought. The federal court acknowledged that Robinson had claimed "an unspecified amount of damages" related to emotional distress and pain and suffering. The federal court further acknowledged that Robinson's motion was "silent regarding the potential value of these other damages." The federal court remanded the case to the trial court since "the actual amount in controversy [was] unclear" and QuikTrip had failed to meet its burden to establish jurisdiction in that court.

a change in circumstances affecting Robinson's damages had occurred post-remand. Significantly, after the case was remanded, Robinson's doctor issued an impairment rating, noting that Robinson's flexibility had reached 75 degrees and that her limited range of motion will be permanent. Prior to the issuance of the permanent impairment rating, Robinson's recovery was ongoing and she was continuing to show increasing degrees of flexibility in her hand and finger. The extent of her recovery, which impacted the amount of her damages, was in flux. Therefore, the permanent impairment rating constituted new evidence that did not exist at the time of the federal court's remand decision.[7] *Howell*, 371 Ga. App. at 5(1).

> [QuikTrip] argues that [Robinson's] injuries were known at the time the motion to remand was filed, and therefore, the severity of her injuries cannot constitute a change in circumstances. Even acknowledging that her injuries were known, we cannot find that the trial court abused its discretion by considering the lingering effects of [Robinson's] physical limitations, as outlined in the [permanent impairment rating], as a change in circumstances.

---

[7] "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later…[T]he pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka v. Kolter City Plaza II*, 608 F3d 744, 751(II) (11th Cir. 2010) (citation modified).

Id.

QuikTrip misplaces reliance upon *Smith v. State*, 319 Ga. 352 (903 SE2d 878) (2024), in support of its proposition that it was entitled to rely upon Robinson's representations in federal court regarding the amount in controversy. In *Smith*, the appellants were judicially estopped from challenging the date of service of an asset forfeiture complaint since they had intentionally and strategically argued to the trial court that they already had acknowledged service, which led the State to forego seeking a trial continuance for the purpose of perfecting service. *Smith*, 319 Ga. at 357-60(2). Here, however, the federal court stated that Robinson's motion was "silent" regarding the potential value of her general damages. When Robinson filed her motion for remand, the amount of her general damages remained "unspecified" and the permanency of her injury had not yet been determined. QuikTrip has no basis to claim reliance upon an unspecified and undetermined amount of damages.

And as in *Howell*, there is no record evidence that QuikTrip followed up to request Robinson's specification of her damages after being notified of the permanent impairment rating.[8] *Howell*, 371 Ga. App. at 7(1). "[QuikTrip's] decisions inured to

---

[8] Robinson points out that upon receiving the new evidence of Robinson's permanent impairment, QuikTrip could have pursued a second notice of successive

its detriment, and its efforts to penalize [Robinson] for its strategy at this juncture are not persuasive." Id.

2. QuikTrip also argues that the trial court erred in failing to set aside the $1.8 million damages award on the ground that it was arbitrary and excessive. Again, no error has been shown.

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly ... so excessive as to be inconsistent with the preponderance of the evidence in the case."OCGA § 51-12-12(a). Robinson requested compensatory damages, including those "for mental and physical pain and suffering and emotional distress[.]"

> It is well established that the amount of an award for pain and suffering damages is governed by no other standard than the enlightened conscience of impartial jurors. And the defendant has a heavy burden under OCGA § 51-12-12 (a) to establish that such a damage award is excessive. In particular, appellate courts should be hesitant to

---

removal to the federal court pursuant to under 28 USC § 1446(b)(3) & (c)(1). See *Bramlett v. YRC, Inc.*, No. 1:16-CV-3870-ODE, slip op. at 3-7(II)(A),(B) (ND Ga. Dec. 7, 2016) (2016 U.S. Dist. LEXIS 192346) (defendant successfully pursued a second notice of removal on the basis of diversity jurisdiction when it later became clear that the amount in controversy exceeded $75,000). QuikTrip, however, failed to do so.

second-guess verdicts where the damage award is based in any significant part on pain and suffering. Therefore, for this Court to overturn the jury's verdict, it must be so flagrantly excessive... in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake by the jurors.

*Vineyard Indus. v. Bailey*, 343 Ga. App. 517, 524(3)(b) (806 SE2d 898) (2017). "There exists no rule or yardstick against which damages for pain and suffering are to be measured[.]" *AT Systems Se. v. Carnes*, 272 Ga. App. 671, 672(1) (613 SE2d 150) (2005). We have previously explained that such damages are not confined to reflect some multiple of special damages for medical expenses. Id. Moreover, comparing a verdict with like cases and other verdicts is difficult "because no two cases are precisely alike."[9] *St. Paul Fire & Marine Ins. Co. v. Dillingham*, 112 Ga. App. 422, 424 (145 SE2d 624) (1965). See also *National Trailer Convoy. v. Sutton*, 136 Ga. App. 760, 762(1) (222 SE2d 98) (1975) (explaining that "[a]mounts awarded in other cases are of slight use in determining excessiveness because to make any comparison of the verdict in this case with any other verdict, that would be of any substantial evidentiary

---

[9] Robinson's doctor explained that everyone is different in how they recover and even people with the same injury would have different time frames as to when they showed improvement and how much function could be regained.

value, we would have to find a case practically similar in all essential details, with substantially the same number and kind of injuries sustained by the plaintiff in this case[.]") (punctuation omitted).

The trial court was authorized to conclude that the jury's verdict was not so excessive as to be inconsistent with the preponderance of the evidence presented in the case. QuikTrip's description of a "broken pinky finger" appears to minimize the extent of Robinson's injury. Instead, Robinson's medical records, as explained by her doctor, reflect that she had sustained a "hand fracture" involving the small finger metacarpal where it attaches to the wrist at the base of the joint. The fracture occurred on Robinson's dominant right hand. "[H]er whole hand had been affected," including stiffness involving other fingers. To repair the fracture, she had surgery under general anesthesia, which included inserting temporary metal wires to repair the fracture. The pain and swelling continued after surgery, and her finger continued to have limited range of motion despite physical therapy. The decrease in motion is expected to be permanent, and she continues to have pain and struggles to pick things up. The trial evidence further established that the permanent injury has negatively impacted Robinson's ability to enjoy certain life activities, and she is no longer able to perform

some of her normal activities without assistance. A trial witness described that Robinson would get aggravated and cry as a result of her physical restrictions. At trial, Robinson stood before the jury and displayed her hand and finger, allowing them to observe the extent of her permanent injury and the scarring that endured.

> An excessive verdict

> is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence. Our role is not to enter the jury box. The jury made its award in its enlightened conscience and based upon the evidence agreed to by all concerned.

*Arnsdorff v. Fortner*, 276 Ga. App. 1, 4(1)(a) (622 SE2d 395) (2005) (physical precedent only).

QuikTrip nevertheless argues that the surgery corrected Robinson's fracture and she had limited to no pain by the time of trial. "However, damages for pain and suffering are not awarded merely for the pain the plaintiff experiences at the time of trial[.]... Rather, such damages are awarded for past, present, and future pain and

suffering beginning at the time of the injury for which the lawsuit was filed." *Vineyard Indus.*, 343 Ga. App. at 525(3)(b).

QuikTrip further contends that during the closing argument, Robinson's counsel disclaimed that she was seeking damages for past pain and suffering.[10] But even if the damages were limited to provide a recovery for only present and future

[10] Robinson's alleged disclaimer of damages for past pain and suffering is unclear. In setting forth Robinson's proposed damages calculations, her counsel argued:

> Actual pain and suffering, [$1,160,000.00]...Past pain and suffering. You know what? We'll say zero for that because it's just -- It is what it is. We're worried about the future now, future pain and suffering; $1,168,000.00. ... Past mental anguish, again, just forget about past; we're here about the future now. Ten years she's been dealing with this. We're giving them a discount for ten years. I should ask for $1,000,000.00 for each of those ten years...*Look, you've heard all the testimony, all the things she's had to deal with, all the things she will deal with in the future, and we're here to collect...They owed it. It's been ten years...*You get to decide what's fair. If that's not fair to you, award what you think is fair. It's your call.

(Emphasis added.) The parties' agreed upon verdict form did not delineate the measures of the damages awarded.

pain and suffering, we cannot say that the amount awarded was unauthorized. A recovery for future pain and suffering may be based upon anxiety or worry proximately attributable to an injury, as well as mental distress caused by impairment of the enjoyment of life. *Valdosta Housing Auth. v. Finnessee*, 160 Ga. App. 552, 552(1) (287 SE2d 569) (1981). In determining whether to award future pain and suffering, the jury is "entitled to draw all such inferences from the evidence as are justified by the common experience and observations of mankind," and it is unnecessary to present direct evidence that the plaintiff will suffer pain in the future. Id. at 552(1).

As previously stated, the trial evidence showed that Robinson's injury was ongoing and permanent, included scarring, and restricted her ability to perform her normal activities. There also was evidence that the permanent injury caused Robinson anguish and frustration. In light of this evidence, the trial court was authorized to find that the jury's award was not excessive. See *Carnes*, 272 Ga. App. at 672-73 (1) (affirming jury's damages award for pain and suffering when the trial evidence showed that the plaintiff's injury was permanent and restricted her participation in her normal activities); *Finnessee*, 160 Ga. App. at 553(1) (affirming jury's damages award for future pain and suffering despite the absence of a permanent physical injury or

disfigurement since there was some evidence that the incident left the plaintiff with lasting mental anguish); *Dillingham*, 112 Ga. App. at 425 (concluding that jury's verdict was not excessive as a matter of law where the evidence most favorable to the plaintiff showed painful and permanent injuries with loss of physical function).

QuikTrip otherwise surmises that the large verdict was based upon Robinson's counsel's allegedly inflammatory closing arguments painting QuikTrip as a bad actor and asserting that QuikTrip had fought responsibility for Robinson's injury for ten years. In this regard, QuikTrip complains that Robinson's counsel argued:

> [T]hey're still blaming Ms. Robinson. We've been doing this for ten years. She was injured almost ten years ago. We are still fighting this issue...It has been 3,121 days since Ms. Robinson was injured. This has been going on for almost ten years, almost ten years, and they just admitted responsibility at trial this week, after ten years... We're here to collect every dollar. They owed it. It's been ten years...This is a large injury, and they fought us the whole time. Now this game is over[.]

QuikTrip also points to Robinson's counsel's arguments regarding glitches in the store's video depicting the fall incident.

Notably, QuikTrip did not object to the complained of arguments at trial. As a result, QuikTrip failed to preserve for review any challenge to those arguments. See

17

*Williams v. Harvey*, 311 Ga. 439, 449(1)(b) (858 SE2d 479) (2021) (in the absence of a contemporaneous objection, a claim about allegedly improper closing arguments need not be reviewed); *White v. McGouirk*, 370 Ga. App. 318, 323(1)(a) (897 SE2d 100) (2024) (because defense counsel failed to interpose a contemporaneous objection to allegedly improper closing arguments, any challenge to the arguments were not preserved for review). Nevertheless, contrary to QuikTrip's claim, the complained of closing arguments fell within the parameters of legitimate comment and did not constitute an improper request for the jury to punish or penalize QuikTrip. See *Moore v. State*, 297 Ga. 773, 774(3) (778 SE2d 210) (2015) (closing argument regarding a surveillance video was not improper since it merely drew reasonable deductions from the evidence admitted and presented at trial); *S. Clearing & Grinding v. Garcia*, 375 Ga. App. 62, 67(3)(a)(iii) (913 SE2d 732) (2025) (unobjected to closing arguments regarding the defendant's corporate greed and failure to accept responsibility for plaintiff's injuries "[did] not rise to the level of showing that the jury's verdict, in light of the totality of the evidence presented at trial, was the product of bias, prejudice, or mistake") (punctuation omitted); *White*, 370 Ga. App. at 321-323(1)(a)(i) (arguments that the defendants "fight everything" and asking the jury to

decide what it would take to make the defendants take responsibility for the plaintiff's injury did not improperly ask the jury to punish or penalize the defendants); *F. D. Wilson Trucking Co. v. Ferneyhough*, 269 Ga. App. 736, 738(1) (605 SE2d 132) (2004) (physical precedent only) (explaining that "counsel should have ample latitude to argue what has transpired in a case from its inception to its conclusion, and the conduct of the party or his counsel with respect to the case is the subject of legitimate comment, tethered only by the sound discretion of the judge").

*Judgment affirmed. Brown, C. J., and Mercier, J., concur.*